# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 2:25-cv-14239

JOHN TEXTOR,

       Plaintiff,

vs.

ICONIC SPORTS EAGLE INVESTMENT
LLC, JAMES G. DINAN, and ALEXANDER
KNASTER,

       Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
## <u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

## **TABLE OF CONTENTS**

**Page**

I.      Introduction ................................................................................................................ 1

II.     Factual Background ..................................................................................................... 3

        A.      The Parties And Their Agreement ........................................................... 3

        B.      ISEI Negotiates For The Option To Redeem Its Eagle Shares .............................. 3

        C.      Plaintiff Refuses To Recognize His Obligations Under The Put Option
                Agreement ................................................................................................. 6

        D.      ISEI Sues Plaintiff In English Court Pursuant To The Terms Of The Put
                Option Agreement .................................................................................... 7

        E.      Plaintiff Files An Improper Complaint Against Defendants In This Court ............ 7

        F.      ISEI Exercises Its Rights under the Put Option Agreement and Share
                Charge Agreement .................................................................................... 8

        G.      Plaintiff Waits Three Weeks To Seek Emergency Relief In This Court ............... 8

III.    Legal Standard ........................................................................................................... 9

IV.     Argument .................................................................................................................... 9

        A.      This Court Is Not The Proper Forum For This Dispute. ....................................... 9

        B.      The Relief That Plaintiff Seeks Is Improper. ........................................................ 12

        C.      Plaintiff Fails to Establish Any The Elements Required For Issuance Of A
                Temporary Restraining Order ................................................................. 15

V.      CONCLUSION .......................................................................................................... 20

## I.   INTRODUCTION

This dispute concerns management of Eagle Football Holdings Limited ("Eagle")—a company incorporated in England and Wales—and does not belong in this Court.  Plaintiff's Amended Complaint and Motion ignores not one, not two, but ***three*** forum-selection clauses that require him to litigate any disputes between him and ISEI in England and Wales, and he explicitly agreed that he "will not argue to the contrary":

> This agreement shall be governed by and construed in accordance with English law and the parties hereby submit to the exclusive jurisdiction of the English courts.  (Ex. A,[1] Put Option Agreement.)

> The parties irrevocably agree that the courts of England and Wales shall have exclusive jurisdiction to settle any claim dispute or issue (including non-contractual claims) which may arise out of or in connection with this agreement. (Ex. B, ¶ 34, SSHA.)

> The courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with this Share Charge (including a dispute relating to the existence, validity or termination of this Share Charge or the consequences of its nullity or any non-contractual obligation arising out of or in connection with this Share Charge (a "Dispute")).  ***The parties agree that the courts of England are the most appropriate and convenient courts to settle Disputes between them and, accordingly, that they will not argue to the contrary***.  (Ex. C, ¶ 22 Share Charge Agreement.) (emphasis added)

This Court's analysis should start and end with these clauses.  In fact, Plaintiff knows that he should be litigating in England.  Before he filed this suit, there already was litigation concerning these agreements in England.  And before Plaintiff brought this Motion, Plaintiff already told Defendants that he will seek the same injunctive relief in the English proceedings.  Because this case belongs in England, this Court should deny Plaintiff's request for emergency relief.

---

[1]   Exhibits referenced herein are annexed to the Declaration of Marianna Chapleau, filed herewith.

Plaintiff's motion also fails on the merits.  In Plaintiff's motion for emergency relief, Plaintiff asks this Court to unring a bell that rang nine days ago.  Plaintiff does not seek to maintain the status quo, but instead asks this Court to turn back time to July 14, 2025, before Defendant Iconic Sports Eagle Investment LLC ("ISEI") exercised its rights under the parties' contracts by signing a stock transfer form and sending letters to the Board of Directors of Eagle Football Holdings Limited ("Eagle")—a company incorporated in England and Wales—requesting their non-discretional registration of the transfer of shares.  This Court should not step in and regulate the actions of a foreign corporation's board of directors.  Nor does the Court have jurisdiction to do so, given that these directors are not parties to this action.

The relief Plaintiff seeks here is plainly inappropriate as a legal matter.  Plaintiff asks this Court to enjoin all three Defendants from taking "any action ***or inaction*** intended to, or which could reasonably be expected to, interfere with [Plaintiff's] exercise of control" over Plaintiff's shares in Eagle.  TRO Motion ("Mot.") at 4.  During the meet-and-confer ordered by this Court, when Defendants' counsel asked Plaintiff's counsel if they could be more specific in articulating what relief they were seeking from this Court, they responded that they could not.  And the reason is clear—what Plaintiff wants is for this Court to monitor daily management of an English company while the threat of contempt hangs over Defendants' heads based on any perceived wrongful "action or inaction."  Plaintiff's request for injunctive relief is, therefore, not only improper given this Court's lack of jurisdiction over the underlying dispute, but also impermissibly vague and unenforceable.

In any event, regardless of the merits, this dispute does not belong in this Court, and this Court should deny Plaintiff's unreasonable request for emergency relief.

## II.      FACTUAL BACKGROUND

### A.      The Parties And Their Agreement

Plaintiff touts himself as "a globally recognized pioneer and developer of disruptive technologies," the "retired Executive Chairman of fuboTV," and a serial entrepreneur. *Leadership*, EAGLE FOOTBALL, https://www.eaglefootball.com/leadership.  Plaintiff is therefore a sophisticated negotiating party, represented by counsel, who knows whom he is negotiating with and what he is agreeing to in the final business contracts that he signs.  Presumably then, Plaintiff knew what he was doing when he agreed to the forum-selection clauses in the three agreements that govern the relationship between Plaintiff and ISEI.  Nevertheless, Plaintiff inexplicably sues ISEI (a Cayman company) and two members of the board of Eagle Football Holdings Limited (a company that Plaintiff himself incorporated in England and Wales) in the State of Florida. Defendant James G. Dinan is a resident of New York; a member of the board of directors of Iconic Sports Management, LLC, a company organized under the laws of England and Wales; and a member of the Eagle board.  First Amended Complaint ("FAC") ¶ 5.  Defendant Alexander Knaster is a resident of England and also a member of the Eagle board of directors.  *Id.* ¶ 8.

### B.      ISEI Negotiates For The Option To Redeem Its Eagle Shares

In November 2022, Plaintiff founded Eagle—a company Plaintiff incorporated in England and Wales—to purchase a controlling stake in Olympique Lyonnais ("OL"), a French football club.  *Id.* ¶ 14.  As part of the formation of Eagle, Plaintiff requested and received a $75 million investment from ISEI. *Id.* ¶¶ 14-16.  This money allowed Plaintiff to complete the purchase of OL. The parties memorialized this transaction in a subscription and shareholders' agreement ("SSHA") on November 16, 2022, amended on December 9, 2022, which provided ISEI with 8,520 of Eagle shares (the "Eagle Shares"), or 19.10% of the company, while Plaintiff remained its majority shareholder holding 74.5%.  *Id.*  The SSHA is governed by English law with a forum-selection

clause mandating that "the courts of England and Wales shall have exclusive jurisdiction to settle any claim dispute or issue (including non-contractual claims) which may arise out of or connection with this agreement."  (Ex B, ¶ 34, SSHA.)

The SSHA provided that Eagle and Iconic Sports Acquisition Corp ("ISAC") would "immediately take active steps to prepare for and pursue a business combination" to take Eagle public (the "De-SPAC Transaction"). ISAC was the Special Purpose Acquisition Company ("SPAC") under common control of the shareholders of ISEI.[2]  *Id.* ¶ 17.  ISAC, like all SPACs, was formed "with the sole purpose of acquiring or merging with a private company in order to take the private company public" as "an alternative to an Initial Public Offering" process.  *Id.* ¶ 19.  Plaintiff represented to all shareholders a desire for Eagle to be a public company and publicly made the same representation.  (Ex. I.)  As such, it was agreed in the SSHA that the only condition to the De-SPAC would be the SPAC having a "a firm commitment of additional equity financing committed from Private Investment in Public Equity ('PIPE') investors of at least $60,000,000 through the issuance of ordinary shares at no less than $8.50 per share."  *Id.* ¶ 24.  The purpose of PIPE financing is to ensure the SPAC will have a minimum amount of capital to contribute to the transaction even if some or all shareholders redeem their shares because they do not agree the company should be acquired.  *Id.* ¶ 34.

Simultaneously, on November 16, 2022, ISEI and Plaintiff entered into the Put Option Agreement that is the subject of this dispute.  *Id.* ¶ 21.  This agreement granted ISEI a put option (the "Option") to sell its shares of Eagle back to Plaintiff for $75 million—the same amount of

---

[2] It is the company (Eagle) that prepares to go public, not the SPAC (ISAC).  The SPAC is a public vehicle and works with the company to merge, but the SPAC has no control over the company's actions with respect to the financial and management information that is required to go public.

money ISEI paid for the shares—plus interest that would accrue from the date ISEI delivered notice that it was exercising the Option. *Id.* ¶ 23.  ISEI could exercise the Option upon the occurrence of a triggering invent, which included (a) ISEI had not exercised its option to procure the De-SPAC upon conditions being met; (b) the De-SPAC transaction had not been completed on or prior to December 31, 2023; and (c)  there had been a material breach by Eagle of ISEI's minority rights.  *Id.* ¶ 24.

If the De-SPAC Transaction occurred, ISEI could sell its shares in Eagle on a publicly traded exchange.  *See id.* ¶ 25.  However, ISEI negotiated for the Put Option Agreement to ensure that it could exit its otherwise illiquid investment if the De-SPAC Transaction did ***not*** occur for whatever reason.  *Id.*  The Put Option Agreement provided that, if the De-SPAC Transaction did not occur, ISEI could exit Eagle and recoup the $75 million it invested.  *Id.*  As further protection for ISEI, if Plaintiff refused to buy ISEI's shares in Eagle back for $75 million, Plaintiff agreed in the Put Option Agreement that ISEI would have the right to initiate a sale of its shares and, if necessary, act as Plaintiff's agent to sell some of Plaintiff's shares to recover any deficit.  *Id.* ¶ 28.

Additionally, on December 8, 2022, Plaintiff and ISEI entered into a share charge agreement (the "Share Charge Agreement").  Plaintiff agreed in the Share Charge Agreement that ISEI would obtain a secured interest in all of ***Plaintiff's*** Eagle shares if ISEI exercised the Option and that ISEI would be entitled to exercise the powers and rights conferred on or exercisable by the legal or beneficial owner of Plaintiff's shares by executing a stock transfer form documenting the transfer.  *Id.* ¶¶ 32-33.  In this way, the Share Charge Agreement provided further assurance that ISEI could recover its full investment in Eagle.  Notably, the Share Charge Agreement is also governed by English law with a forum-selection clause mandating jurisdiction that "[t]he courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with

this Share Charge . . . ." (Ex. C, Share Charge Agreement (emphasis added).)  The parties further explicitly "agree[d] that the courts of England are ***the most appropriate and convenient courts to settle Disputes between them and, accordingly, that they will not argue to the contrary***." (*Id.*)

### C.   Plaintiff Refuses To Recognize His Obligations Under The Put Option Agreement

As it turned out,  Eagle did not take the appropriate steps to progress the DeSPAC (in terms of engagement, financial controls, reporting and management) and numerous negative public events and media surrounded the various clubs.[3] By July 26, 2023, it was clear to ISEI that a DeSPAC would not occur and that it should exit Eagle as a shareholder.  This outcome was clearly considered by both sophisticated parties at the outset when the parties signed the Put Option Agreement. *Id.* ¶¶ 29, 45.  Accordingly, on July 26, 2023, ISEI provided Plaintiff with proper notice that it was exercising the Option under the Put Option Agreement and waited the requisite year under the contract. *Id.* ¶ 29.  Nevertheless, Plaintiff has failed to honor his obligations under the Put Option Agreement ***for nearly two years*** and refused to pay ISEI the $75 million plus accrued interest.  [Ex. D, England Claim]. [4]

---

[3]   *See* Ciaran Wiseman, *"The problem is me" – John Textor details Lyon situation with Crystal palace in danger of Europa League ban*, TALKSPORT (July 10, 2025, 7:01 PM), https://shorturl.at/eLCrr; *see also* Ben Horney, *John Textor Sues Investors After They Sue Him Over Failed $1B Soccer Merger*, FRONT OFFICE SPORTS (July 9, 2025, 4:04 PM), https://frontofficesports.com/john-textor-sues-investors-1b-soccer-merger/.

[4]   Under the PSLRA, courts must consider the complaint in its entirety, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Further, "[c]ourts may take judicial notice of facts that are not subject to reasonable dispute because they (1) are generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  *Jastram v. Nextera Energy, Inc.*, LEXIS 175486, at *13 (S.D. Fla. Sept. 27, 2024) (Cannon, J.).  Unless otherwise indicated, internal citations are omitted, and emphasis is added.

**D.      ISEI Sues Plaintiff In English Court Pursuant To The Terms Of The Put Option Agreement**

On July 3, 2025, ISEI commenced legal proceedings against Plaintiff in England, the proper venue pursuant to the terms of the parties' agreements. *Id.* ISEI seeks specific performance of Plaintiff's obligation to purchase the Eagle shares from ISEI so that ISEI can recover what is owed under the contract—over $93 million. *Id.*; FAC ¶ 32.

**E.      Plaintiff Files An Improper Complaint Against Defendants In This Court**

After ISEI filed its complaint in England, Plaintiff filed his Complaint in this Court on July 4, 2025. On July 11, 2025, the Court dismissed that complaint *sua sponte* on the basis that it was an impermissible "shotgun pleading." Order, at 1 [ECF No. 18.]. Plaintiff then filed his Amended Complaint in an attempt to remedy these errors. [ECF No. 20].

The Amended Complaint asserts three counts against Defendants: (1) violations of Section 10(b) of the Securities Exchange Act, (2) "Violations of Florida Securities Law," and (3) fraudulent misrepresentation *and* "Deceit under English Law." *Id.* Plaintiff therefore asks this Court to apply both Florida law and English law to the dispute arising from the Put Option Agreement. Notably, the Amended Complaint asserts: "The Put Option Agreement has a choice of law provision specifying that claims related to that agreement would be adjudicated under the laws of England." FAC ¶ 67. Nowhere in the Complaint does Plaintiff acknowledge the rest of that same sentence: "***and the parties hereby submit to the exclusive jurisdiction of the English courts***." (Ex. A., Put Option Agreement.)

The crux of Plaintiff's fraud claims is that, at the time the parties entered the Put Option Agreement, Defendants collectively knew that they would not be able to obtain the PIPE financing because Defendant Knaster and another investor in ISAC allegedly had "close financial ties with Russian individuals and assets" subject to sanctions by the United Kingdom. *Id.* ¶ 35. At bottom,

Plaintiff alleges that Defendants invested $75 million in Eagle—under the false pretense that they could obtain financing that they knew they could not get because of ties to Russia—all so that Defendants could redeem the Option for $75 million plus interest at a later date. As relief, Plaintiff seeks recission of the Put Option Agreement and Share Charge Agreement as well as actual, compensatory, and punitive damages and fees.

### F. ISEI Exercises Its Rights under the Put Option Agreement and Share Charge Agreement

On July 15, 2025, because of Plaintiff's continued failure to fulfill his contractual obligation to redeem ISEI's shares pursuant to the Put Option Agreement, ISEI exercised its rights to enforce the security granted to ISEI under the Share Charge Agreement. *See* Ex. 1 to Mot. (ECF No. 27-2). Specifically, ISEI signed a stock transfer form documenting the transfer of legal title of Plaintiff's shares to ISEI, and then formally requested the Eagle Board to execute its ministerial duty to register the transfer in accordance with clauses 9.1(a) and 9.3 of the Share Charge Agreement. In addition, ISEI requested that the Eagle board of directors remove all directors appointed by Plaintiff on the basis that ISEI is entitled to exercise its rights under the Share Charge to exercise the powers and rights conferred on or exercisable by the legal or beneficial owner of Plaintiff's shares. *See* Ex. 1 to Mot. (ECF No. 27-2).

### G. Plaintiff Waits Three Weeks To Seek Emergency Relief In This Court

Nearly three weeks after filing his complaint, and a week after ISEI exercised its rights pursuant to its agreements with Plaintiff—on July 22, 2023—Plaintiff moved for emergency relief in this Court. Plaintiff seeks a preliminary injunction and temporary restraining order ordering "Defendants to: (1) [c]ease and refrain from representing that they have any, or purporting to or otherwise attempting to exercise any, rights over Textor's shares in Eagle . . . . (2) [n]ot take or

permit any action or inaction intended to, or which could reasonably be expected to, interfere with Textor's exercise of control . . . over the Textor Shares."  [ECF No. 27].

The day before, on July 21, 2025, Plaintiff notified ISEI that it would seek a parallel "interim injunction" in the English court as well if ISEI did not agree to the same demands made in Plaintiff's emergency motion in this Court. (Ex. G.)  ISEI did not agree for the same reasons articulated here, and on July 23, 2025, Plaintiff's English counsel informed ISEI that Plaintiff "will now proceed to [file] the [injunction] application as soon as it is ready" in the English proceedings. Ex. H  (July 23, 2025 letter).  On July 24, 2025, Plaintiff's U.S. counsel reiterated that Plaintiff would be simultaneously seeking injunctive relief in the English proceedings.

### III.     LEGAL STANDARD

In the Eleventh Circuit, "a preliminary injunction is considered "an extraordinary and drastic remedy." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).  To obtain a temporary restraining order or a preliminary injunction, "a plaintiff must show that (1) he has a substantial likelihood of success on the merits, (2) he will suffer irreparable injury unless the injunction issues, (3) the injunction would not substantially harm the other litigant, and (4) if issued, the injunction would not be adverse to the public interest." *McWilliams v. Dixon*, 2024 WL 2194664, at *1 (S.D. Fla. Apr. 22, 2024) (Cannon, J.).  Such injunctions are "an extraordinary remedy never awarded as of right." *Id.*  Indeed, "[t]he burden of persuasion in all of the four requirements is at all times upon the plaintiff." *Grant v. Clerk of Okeechobee Court, FL*, 2022 WL 22870178, at *1 (S.D. Fla. Dec. 21, 2022) (Cannon, J.).

### IV.     ARGUMENT

#### A.     This Court Is Not The Proper Forum For This Dispute.

This Court should dismiss the TRO Motion because England is the proper forum. Ex. A. Generally, dismissal is appropriate under the doctrine of forum non conveniens if the movants

"demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Asset Recovery Mgmt., Inc. v. United Yacht Transp. LLC*, 2021 WL 8743855, at *2 (S.D. Fla. Jan. 3, 2021) (Cannon, J.).  The presence of a valid forum-selection clause, however, "requires courts to modify their *forum non conveniens* analysis . . . because forum choice clauses almost always carry controlling weight." *Id*.  Moreover, the existence of a forum-selection clause "shifts the burden to the ***non-moving party*** to demonstrate that the clause should be disregarded." *Id.* (emphasis added).  To meet his burden, Plaintiff must show that (1) the forum-selection clause is contractually invalid and (2) public interest factors weigh in favor of disregarding the forum-selection clause.  *Id.*  Plaintiff cannot his burden to make either showing here.[5]

### 1.  Plaintiff Has Not Shown That The Forum-Selection Clause Is Invalid Or Its Enforcement Would Be Unreasonable.

Plaintiff has failed to show that the Put Option Agreement's forum-selection clause is invalid.  A forum-selection clause is "presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009).

Plaintiff makes no attempt to argue that the forum-selection clause is invalid here.  In fact, Plaintiff selectively quotes the first half of the clause relating to choice-of-law in his Complaint, admitting that the provision generally is valid and applicable to the claims he asserts in this Court. FAC ¶ 67.  At most, Plaintiff suggests in footnote that the Court should ignore the forum-selection clause because his federal securities claims "can only be brought in  United States federal court."

---

[5]  Defendants reserve the right to assert personal jurisdiction defenses and intend to do so on a motion to dismiss.

Mot. at 12 n.4.  Plaintiff offers no explanation for why his other claims should not be heard in England.

Tellingly, the only case Plaintiff cites for support actually undermines his argument.  In *Seafarers Pension Plan v. Bradway,* the Seventh Circuit concluded that *Delaware law* prevent defendants from waiving securities fraud claims under Section 14(a) through a forum-selection clause in a company bylaw.  23 F.4th 714, 720 (7th Cir. 2022).  But Plaintiff omits that in its analysis, the Seventh Circuit reaffirmed its precedent that held that "a choice-of-law and forum-selection provisions [designating England as the exclusive forum] did not violate United States public policy and were therefore enforceable despite plaintiffs' reliance on the anti-waiver provisions of the 1933 and 1934 Acts."  *Id.*; *see also Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) ("Given the international nature of the transactions involved here, and the availability of remedies under British law that do not offend the polices behind the securities laws, the parties' forum selection and choice of law provisions contained in the agreements should be given effect.").  Other courts considering this issue have reached the same conclusion.  Plaintiff's securities claim does not prevent this Court from enforcing the forum-selection clause.  Plaintiff has not met his burden to show that enforcement of the forum-selection clause would be unfair or unreasonable.

### 2.    Plaintiff Has Not Shown That Public Interest Factors Weigh In Favor Of Invalidating The Forum-Selection Clause.

Public policy, as stated by the Supreme Court, strongly weighs in favor of enforcement: The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 13-14 (1972).  Otherwise, courts generally consider as public interest factors "the administrative difficulties flowing from court congestion; the local

interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Asset Recovery Mgmt.*, 2021 WL 8743855, at *3. Here, they all weigh in favor of enforcement of the forum-selection clause.

To begin with, there is already a first-filed case arising from this dispute pending in England, so to the extent there is court congestion, it is this case in this Court. Second, the dispute here centers on a company that Plaintiff himself incorporated in England and Wales, governed by contracts that *all* mandate exclusive jurisdiction of disputes in English courts. Plaintiff and ISEI even went so far to agree that "the courts of England are the most appropriate and convenient courts to settle Disputes between them and, accordingly, that ***they will not argue to the contrary***." Therefore, if any forum has a "local interest in having localized controversies decided at home," it is the English courts—not this Court. And, finally, this Court is not "at home with the law" in Florida as even Plaintiff admits that English law should apply to these claims. Plaintiff has failed to meet his burden to show that public interest factors weigh in favor of this Court disregarding the parties' three forum-selection clauses.

### B.     The Relief That Plaintiff Seeks Is Improper.

Plaintiff's request for injunctive relief must be denied for the additional reason that he seeks relief that is disfavored by courts and unenforceable due to its vagueness and overbreadth.

*First*, Plaintiff seeks for this Court to order ISEI to unwind the exercise of its rights and the demands it made on the Eagle Board on July 15. Essentially, Plaintiff seeks mandatory injunctive relief from ISEI. *Antoine on behalf of I.A. v. Sch. Bd. of Collier Cnty.*, 301 F. Supp. 3d 1195, 1202 (M.D. Fla. 2018) ("An injunction that requires the defendant to act affirmatively alters the status quo and is thus mandatory."). Mandatory injunctive relief is "particularly disfavored," and "courts should exercise more caution when the preliminary injunction sought is mandatory." *Id.* Along with asking this Court to order ISEI to withdraw its demands to the Eagle Board, Plaintiff also

improperly seeks to enjoin the Eagle directors themselves from acting on ISEI's July 15 demands. *See* Mot. at 1 ("[I]f the Board accedes to Defendants' pressure campaign of aggressive and unlawful demands, which it may feel forced to do at any time, the damage to Eagle, to Plaintiff, to Eagle's other shareholders, and to the millions of fans worldwide who root for Eagle-controlled teams would be drastic and irreparable."). But it is blackletter law that "the person from whom injunctive relief is sought must be a party to the underlying action." *Smith v. United States*, 2009 WL 1942566, at *2 (S.D. Fla. June 30, 2009). "Federal Rule of Civil Procedure 65(d), governing injunctive relief, explicitly states that orders granting injunctive relief are only binding 'upon the parties to the action'" and "the Court notes that it has no authority to grant injunctive relief against nonparties." *Girroir v. Lopez*, 2010 WL 11504481, at *1 (S.D. Fla. Mar. 10, 2010) (internal quotations omitted). This Court cannot compel the Eagle Board members not to act, nor does it have jurisdiction to do so. On this basis alone, Plaintiff's motion should be denied.

*Second*, Plaintiff explicitly asks this Court to order Defendants to "refrain from … attempting to exercise any[] rights" under the parties' agreements. Mot. at 20. Plaintiff essentially asks this Court to enjoin ISEI from proceeding with the litigation in English court—where claims arising from the dispute were first filed, where the local law applies to the contracts in dispute, and in fact where this dispute belongs. Plaintiff also puts this Court in the position of potentially ordering relief that could directly conflict with the relief requested in and potentially ordered by the English court. This request constitutes a disfavored "anti-suit injunction" and is particularly troubling given that ISEI properly filed an action to enforce its rights under the agreements, seeking specific performance, in English court *before Plaintiff even filed this action*. [Ex. D, England Claim]. "Courts must [ ] be mindful that, because an anti-suit injunction effectively restricts the jurisdiction of a foreign court, such an injunction should be used sparingly and granted 'only with

care and great restraint." *Hart Dairy Creamery Corp. v. Kea Invs. Ltd*., 2020 WL 6363904, at *7 (S.D. Fla. Oct. 29, 2020), *aff'd sub nom. Hart Agric. Corp. v. Kea Invs. Ltd*., 2023 WL 155208 (11th Cir. Jan. 11, 2023).  In addition, as the Eleventh Circuit has observed, "the foreign country is ordinarily the best place to litigate a dispute revolving around a foreign rule of decision." *Ford v. Brown*, 319 F.3d 1302, 1310 n.24 (11th Cir. 2003).

*Third,* the relief that Plaintiff seeks is impermissibly vague.  Federal Rule of Civil Procedure 65(d)(1) provides that injunctive relief must be "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  This rule exists to ensure that those subject to injunctions receive clear notice of what conduct is prohibited and to prevent judicial enforcement of vague decrees.  As the Supreme Court warned in *Schmidt v. Lessard*, "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."  414 U.S. 473, 476 (1974).

Plaintiff's proposed order fails this standard by a wide margin. It is so vague, wide-ranging, and lacking in concrete directives that full compliance would be practically impossible. The proposed relief reads more like an open-ended wish list than a judicially enforceable order. If entered, it would all but guarantee emergency filings over alleged "violations" on each of the fourteen days it remains in effect, burdening both Defendants and the Court with repeated disputes over unclear terms. This is precisely the kind of poorly defined injunction that *Schmidt* and *S.C. Johnson* warn against. As the *Schmidt* Court further noted, "[b]asic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed," 414 U.S. at 476, and "[u]nless the trial court carefully frames its orders of injunctive relief, it is impossible for an

appellate tribunal to know precisely what it is reviewing." *Id.* at 477.  Because Plaintiff's proposed

TRO fails to satisfy Rule 65(d)(1), it cannot be entered.

### C.     Plaintiff Fails to Establish Any The Elements Required For Issuance Of A Temporary Restraining Order

#### 1.     Plaintiff Is Not Likely To Succeed On The Merits.

##### a.     Count I: Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.

Plaintiff cannot succeed on his securities claims because of numerous fatal pleading

deficiencies.  "To state a claim for securities fraud under section 10(b) of the Act and Rule 10b-5,

a plaintiff must allege six elements: (1) a material misrepresentation or omission; (2) made with

scienter; (3) a connection with the purchase or sale of a security; (4) reliance on a misstatement or

omission; (5) economic loss; and (6) a causal connection between the material misrepresentation

or omission and the loss, commonly called loss causation." *Henningsen v. ADT Corp.*, 161 F.

Supp. 3d 1161, 1180 (S.D. Fla. 2015) (internal citation and quotation marks omitted).   Plaintiff

not only fails to state a claim as a matter of law, but the Amended Complaint's allegations fail to

satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b) and the Private

Securities Litigation Reform Act ("PSLRA").

Material Representation or Omission: In the Amended Complaint, Plaintiff alleges five

material misrepresentation or omissions.  *See* FAC ¶¶ 25, 35, 38, 46.  These alleged statements

and omissions fail for several reasons.

*First,* Plaintiff fails to allege any statements or omissions with the requisite particularity.

To satisfy Rule 9(b), the complaint must set forth: "(1) precisely what statements were made in

what documents or oral representations or what omissions were made, and (2) the time and place

of each such statement and the person responsible for making (or, in the case of omissions, not

making) same, and (3) the content of such statements and the manner in which they misled the

plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Fed. R. Civ. P. 9(b). Here, however, Plaintiff engages in impermissible group pleading, lumping all Defendants together and omitting essential details, such as how the statements were made, where the statements were made, and who made the statements. Such vague allegations are inactionable under the federal securities laws. *Angelini v. Gonzalez*, 2017 WL 10242455, at *3 (S.D. Fla. June 8, 2017) (recommending dismissal where "[p]laintiff fail[ed] to identify precisely what false statements Defendant . . . made that induced Plaintiff's investment or the time and place such statements were made"), *report and recommendation adopted*, 2017 WL 10242423 (S.D. Fla. Aug. 1, 2017); *Apollo Mgmt. Grp. v. Croxall*, 2023 WL 11799718, at *4 (S.D. Fla. Mar. 29, 2023) (dismissing complaint because the allegations "fail[ed] to indicate whether the statements were made orally or in writing, and the place where they were made").

*Second*, the statements identified by Plaintiff constitute non-verifiable puffery, especially the alleged forward-looking, optimistic statements about financing—which are not actionable under the federal securities laws. *Carvelli v. Ocwen Fin. Corp.*, 2018 U.S. Dist. LEXIS 73597 (S.D. Fla. Apr. 27, 2018), at *13 (disregarding "generalized, non-verifiable, vaguely optimistic statements" because "a reasonable investor would not base a decision on such statements.").

Scienter: Plaintiff fails to plead scienter. Under the PSLRA, plaintiffs are required to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

Here, Plaintiff makes no attempt to meet this burden. He repeatedly alleges that "Defendants well knew and did not disclose to Plaintiff" alleged ties with Russian individuals. FAC ¶¶ 2, 27, 35, 39, 70. These allegations are insufficient for at least two reasons. First, Defendants are impermissibly lumped together in these scienter allegations. *Cambridge Ret. Sys.*

*v. MEDNAX, Inc.*, 2019 WL 4893029, at *21 (S.D. Fla. Oct. 3, 2019) ("Plaintiff's scienter allegations fail at the threshold for failing to adequately allege scienter allegations specific to each of the three individual Defendants, rather than inappropriately lumping allegations of scienter[.]") More importantly, Plaintiff's "conclusory allegations that these Defendants knew or recklessly disregarded the falsity of their statements or omissions . . . is insufficient to meet the heightened pleading requirement for scienter." *Schultz v. Applica Inc.*, 488 F. Supp. 2d 1219, 1227 (S.D. Fla. 2007).

        <u>Loss causation</u>:  Finally, Plaintiff cannot adequately allege loss causation because the alleged Russian ties underlying the misstatements were public knowledge ***many months before Plaintiff agreed to the Put Option Agreement.***  If the alleged corrective disclosure is "confirmatory" of information previously known, it cannot be corrective. *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1246 (11th Cir. 2023).  Put another way, if a "disclosure d[oes] not reveal any new information that was previously concealed or obscured," it is not corrective. *Jastram v. Nextera Energy, Inc.*, 2024 U.S. Dist. LEXIS 175486, at *21 (S.D. Fla. Sept. 27, 2024); *see also Gnanaraj v. Lilium N.V.*, 2024 U.S. Dist. LEXIS 151524, at *24 (S.D. Fla. Aug. 23, 2024) ("total mix of information" considered for loss causation).  Here, multiple articles published months before Plaintiff executed the Put Option Agreement in December 2022 reported about Defendant Knaster's alleged ties to sanctioned individuals that Plaintiff complains he did not know about and that Defendants failed to disclose.  Ex. E, Financial Times Article;  Ex. F, Bloomberg Article.  Plaintiff cannot demonstrate loss causation as a result.

### b.      <u>Count II: Florida Securities Law, Chapter 517.301</u>

        Plaintiff's Florida law securities claim fails for similar reasons.  "The elements of a cause of action under [Fla. Stat. § 517.301(1)(a)(1)-(3) are identical to those under Rule 10b-5 of the Exchange Act, except that the scienter requirement under Florida law is satisfied by [a] showing

of mere negligence, and a plaintiff does not need to prove loss causation under Florida law." *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011) (quoting *Grippo v. Perazzo*, 357 F.3d 1218, 1223 (11th Cir. 2004) (internal quotations omitted); (citing *E.F. Hutton & Co., Inc. v. Rousseff*, 537 So.2d 978, 981 (Fla. 1989)).  Accordingly, Plaintiff is unlikely to succeed on his Florida law claim for, among other reason, failure to plead an actionable misstatement or omission, as described above.

### c.      Count III: Fraudulent Misrepresentation / Deceit under English Law

Plaintiff's claim under English Law also will fail.  U.S. courts considering English deceit claims regularly dismiss these claims when the misstatements are facially accurate, when the plaintiff fails to allege any facts of actual knowledge of falsity, and when the allegations fail to meet the heightened pleading standard for fraud clams.  *Mondrian Global Equity Fund, L.P. v. BP P.L.C. (In re BP p.l.c.)*, 51 F. Supp. 3d 693, 701-2 (S.D. Tex. Sept. 30, 2014) (dismissing English deceit claim because the statements of oil company-defendant, which provided a "best guess" on its oil spill rate, were "facially accurate," and plaintiff had failed to show that any internal estimates were withheld); *see also In re BP p.l.c. Sec. Litig.*, 109 F. Supp. 3d 946, 966 (S.D. Tex. Sept. 30, 2014) (dismissing plaintiffs' deceit claim because the falsity and scienter allegations were "too conclusory to satisfy the requirements of Rule 8(a) and 9(b)"); *Avilon Auto. Grp. v. Leontiev*, 2020 N.Y. Misc. LEXIS 1285 (S.D.N.Y. Mar. 17, 2020) (dismissing English deceit claim that failed under similar New York Law).

### 2.      Plaintiff Does Not Adequately Allege, And Would Not Suffer, Irreparable Harm.

First, the alleged harms are entirely speculative and unsupported by a factual basis.  To qualify as irreparable, "the injury must be neither remote nor speculative, but actual and imminent."  *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 896

F.2d 1283, 1285 (11th Cir. 1990).   The Eleventh Circuit has made clear that Plaintiff must "allege[], and ultimately prove[], a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury," *Church v. City of Huntsville,* 30 F.3d 1332, 1337 (11th Cir. 1994).   Here, Plaintiff asserts that, *if* the Board registers ISEI's stock transfer form making ISEI the controlling shareholder, ISEI could irreparably damage Eagle.   Mot. at 17.   The double-hypothetical situation (if the Board acts and if ISEI's makes certain leadership decisions) fails to allege or prove a real and immediate harm.   Moreover, the hypothetical assumes that a controlling shareholder will act against its fiduciary duties and harm the company in which it has minority ownership, which is contrary to naturally aligned interests.   Finally, Plaintiff's base allegation that it would be "impossible to complete the IPO" if ISEI controlled Eagle is both conclusory and unsupported by a factual basis. Mot. at 18.   *Second*, Plaintiff fails to show that any hypothetical irreparable harm could not be compensated with damages.   Injunctive relief is disfavored where "adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation."   *Sampson v. Murray*, 415 U.S. 61, 90, 94 (1974) (denying a temporary injunction).   Here, even if Plaintiff prevails on his claims, compensatory relief will be available and sufficient.   Plaintiff alleges that Defendants procured the Put Option Agreement and Share Change Agreement by fraud and asks the court to grant him rescission of both agreements.   (FAC ¶¶ 57, 58, 63-65, 74.)   If obtained, such relief would, in the ordinary course of litigation, restore Plaintiff to the position he held prior to entering into these agreements.

### 3.   The Concrete Harm To Defendants Outweighs Any Speculative Harm To Plaintiff.

Here, Plaintiff asks this Court to enjoin Defendants from taking "any action or inaction" to enforce its rights under its agreements with Plaintiff.   But a fundamental principle of contract law is that it is "improper for the court to rewrite the terms of a contract, or draw a new contract for

the parties, when the terms thereof are clear and unambiguous." *Avitis SAS v. Serden Techs., Inc.*, 2012 WL 12861029, at *3 (S.D. Fla. July 3, 2012) (denying motion for temporary restraining order that would, in effect, expand the terms of the parties' bargained-for rights). Plaintiff's overbroad request for injunctive relief, if granted, would interfere with litigation that ISEI initiated first in English court, where the parties agreed to settle disputes arising from their agreements. This relief would therefore deprive ISEI of the benefit of its bargain with Plaintiff and essentially cut off its ability to seek recourse from the court that has proper jurisdiction over these disputes. On the flip side, even if the Court denies Plaintiff's motion, Plaintiff remains free to seek injunctive relief as he has repeatedly promised to do in the parallel litigation in English court.

### 4. The Injunction Is Adverse To The Public Interest.

Plaintiff ignores the law in this Circuit holding that the public interest is served in the enforcement of agreements and holding parties to their contracted agreements. *See, e.g., Larweth v. Magellan Health, Inc.*, 841 F. App'x 146, 158 (11th Cir. 2021) (explaining that the public interest has a strong interest in seeing that contract rights are respected). If anything, the public interest supports respecting the jurisdiction of international courts and upholding contract rights negotiated by sophisticated parties. This Court should deny Plaintiff's motion..[6]

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Motion should be denied.

Dated:  July 24, 2025                                         Respectfully submitted,

                                                            */s/ Marianna C. Chapleau*
                                                            Marianna C. Chapleau (Fla Bar No. 1059142)

---

[6] Plaintiff has failed to show "how defendants would suffer ***no*** harm if an injunction were improvidently issued," especially given that the requested relief would bar Defendants from acting on bargained-for contractual rights. *Nadeau v. Condo Black Book, LLC*, No. 23-CV-21271, 2023 WL 3266939, at *3 (S.D. Fla. May 1, 2023).

Patrick Malone (Fla Bar No. 1051725)
Kirkland & Ellis LLP
Three Brickell City Centre,
98 S.E. 7th St., Suite 700
Miami, FL 33131
Tel: (305) 432-5600
Fax: (305) 432-5601
mchapleau@kirkland.com
patrick.malone@kirkland.com

Stefan Atkinson (*pro hac vice pending*)
Jordan D. Peterson (*pro hac vice pending*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 909-3247
Fax: (212) 446-4900
stefan.atkinson@kirkland.com
jordan.peterson@kirkland.com

*Counsel for Defendants Iconic Sports Eagle*
*Investment LLC, James G. Dinan and*
*Alexander Knaster*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2025, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve Notice of Filing on all counsel of record.


*/s/ Marianna Chapleau*
Marianna Chapleau