UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 25-14239-CIV-CANNON

JOHN TEXTOR,

    Plaintiff,

v.

ICONIC SPORTS EAGLE INVESTMENT LLC,
JAMES G. DINAN,
and ALEXANDER KNASTER,

    Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF [ECF No. 27]

**THIS CAUSE** comes before the Court upon Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"), filed on July 22, 2025 [ECF No. 27]. Following receipt of the Motion, the parties filed a Joint Status Report on the Parties' Conferral [ECF No. 31], Defendants filed an Opposition to the Motion [ECF No. 32], Plaintiff filed a Reply [ECF No. 36], and then the parties each filed authorized sur-replies [ECF Nos. 40, 43]. The Court has reviewed the Motion and the full record, including the exhibits attached to both parties' filings, and is otherwise fully advised.[1] Ultimately, although Plaintiff has set forth concerning allegations of fraud and impending harm absent injunctive relief barring Defendants' intrusion upon Plaintiff's controlling position in Eagle Football Holdings Limited, an English company, the Court is constrained to **DENY** the Motion on the threshold basis of the parties'

---

[1] These exhibits include, among various items, the Put Option Agreement [ECF No. 32-2]; the Subscription and Shareholders' Agreement [ECF No. 32-3]; and the Share Charge Agreement [ECF No. 32-4]; [*see also* ECF No. 27-1; ECF No. 27-2; ECF No. 32-1; ECF No. 32-5; ECF No. 32-6; No. 32-7; ECF No. 32-8; ECF No. 32-9; ECF No. 36-1; ECF No. 36-2].

undisputed forum selection clauses. This Order is not to be construed as a final determination of any of Plaintiff's claims or Defendants' potential defenses, including the *forum non conveniens* defense as raised in the Opposition, any of which may be brought by appropriate motion. The Court reasons below.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

The Court provides an abbreviated background as necessary to contextualize Plaintiff's request for emergency relief.

On July 11, 2025, Plaintiff John Textor, a Florida resident and majority shareholder of Eagle Football Holdings ("Eagle"), filed a three-count Amended Complaint for fraud associated with a plan to take public his collective interests in various soccer teams, aggregated in Eagle [ECF No. 20].[3] Eagle is a privately held company incorporated in England that owns interests in soccer clubs "all over the world," including teams in Florida, France, Belgium, England, and Brazil [ECF No. 20 ¶ 4].

Without detailing the full nuances of the parties' deal to take Eagle public through use of a "SPAC" (special purpose acquisition vehicle), the Amended Complaint alleges that the two individual Defendants—James Dinan and Alexander Knaster—and a related institutional Defendant, Iconic Sports Eagle Investment LLC ("ISEI")—collaborated with Plaintiff to do two overall things: first, create Eagle to purchase a controlling stake in a French soccer team; and second, to take Plaintiff's entire portfolio public [ECF No. 20 pp. 3–4]. Defendant ISEI is a company organized under the laws of the Cayman Islands; Defendant Dinan is a resident of Florida

---

[2] No evidentiary hearing is required to resolve the Motion because the undisputed forum selection clauses are part of the record as submitted, and neither party raises an authenticity challenge to the agreements.

[3] The Court previously dismissed his near-identical Complaint, filed on July 4, 2025, on shotgun pleading grounds [ECF Nos. 1, 18].

and a board member in three international companies as relevant to this action (Eagle, Iconic Sports Management, LLC, and ISAC); and Defendant Knaster is a resident of England and a board member of ISAC and Eagle [ECF No. 20 ¶¶ 3–8].

The Amended Complaint describes three agreements executed between the parties, all in late 2022: the Subscription and Shareholders Agreement [ECF No. 32-3 ("Subscription Agreement" dated November 16, 2022); a Put Option Agreement [ECF No. 32-2 ("Put Option Agreement" dated November 16, 2022); and a Share Charge Agreement [ECF No. 32-4 (Share Charge Agreement" dated December 8, 2022)] [ECF No. 20 ¶¶ 15–33]. Per the Subscription Agreement, Defendant ISEI invested $75 million in Eagle in exchange for 15.7% interest in the entity; and the parties began preparations to take Eagle public at a $1.2 billion valuation [ECF No. 20 ¶¶ 14–17]. Per the Put Option Agreement, allegedly signed at Defendants' behest, ISEI was permitted to sell the shares it received under the Subscription Agreement for $75 million plus interest accrued at 11% but only upon certain triggering conditions—one of them being if the go-public plan went awry due to financing trouble (the "De-SPAC" Option) [ECF No. 20 ¶¶ 21–24]. Finally, per the Share Charge Agreement, Plaintiff was required to buy the allotted shares from ISEI in the event that it exercised the Put Option [ECF No. 20 ¶¶ 30–33]. Plaintiff's own controlling shares in Eagle are used as security for the Share Charge Agreement; in other words, ISEI has the contractual right to Plaintiff's controlling interest in Eagle in the case of a default [ECF No. 20 ¶ 32; ECF No. 32-4].[4]

---

[4] The Amended Complaint alleges that Plaintiff was physically present in Florida when he signed the Put Option Agreement [ECF No. 20 ¶8] but does not otherwise identify the location of execution for the remaining agreements or the remaining parties.

All three Agreements contain a forum-selection clause directing associated disputes to England. The text of these provisions—the contractual validity of which Plaintiff does not specifically challenge—provides as follows:

> **Subscription Agreement**: The parties irrevocably agree that the courts of England and Wales shall have exclusive jurisdiction to settle any claim dispute or issue (including non-contractual claims) which may arise out of or in connection with this agreement [ECF No. 32-3 ¶ 34].
>
> **Put Option Agreement**: This agreement shall be governed by and construed in accordance with English law and the parties hereby submit to the exclusive jurisdiction of the English courts [ECF No. 32-2 ¶ 13.10].
>
> **Share Charge Agreement**: The courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with this Share Charge (including a dispute relating to the existence, validity or termination of this Share Charge or the consequences of its nullity or any non-contractual obligation arising out of or in connection with this Share Charge (a "Dispute")). The parties agree that the courts of England are the most appropriate and convenient courts to settle Disputes between them and, accordingly, that they will not argue to the contrary [ECF No. 32-4 ¶¶ 22.2, 22.3].

Ultimately, Eagle never went public; the parties had trouble obtaining the requisite funding to complete the DeSPAC process, and ISEI tried to exercise its Put Option to recoup its investment. According to Plaintiff, the plan's undoing is a result of Defendant Knaster and other secondary investors' financial entanglement with Russian individuals subject to sanctions by the United States, the United Kingdom, and the European Union [ECF No. 20 ¶¶ 35–38]. Plaintiff alleges that these associations made obtaining the requisite financing for the go-public effort "practically impossible," which Defendants knew at the time of the Put Option Agreement [ECF No. 20 ¶¶ 35–38]. From Plaintiff's point of view, Defendants falsely portrayed the Put Option and Share Charge Agreements as "insurance policies" that were unlikely to be triggered, all the while knowing the purported far-fetched scenario in which they were unable to obtain financing would likely occur [ECF No. 20 ¶¶ 35–38; *see* ECF No. 20 ¶ 42 ("Defendants intended that Textor should act in

reliance on their false representations by executing the Put Option Agreement and the Share Charge Agreement, and Textor did so rely on Defendants' false representations in executing those agreements.")].

Things fell apart, and on July 3, 2025, Defendant ISEI brought an action against Plaintiff in England to compel him to purchase the shares pursuant to the Share Charge Agreement ("the English Proceeding") [ECF No. 32 p. 9; ECF No. 32-5 (English Complaint)]. Plaintiff initiated this action the very next day [ECF No. 1], alleging one count of federal securities fraud in violation of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 (Count I); one count of Florida securities law, in violation of Fla. Stat. § 517.301 (Count II); and one count of fraudulent misrepresentation or deceit under English law (Count III). Count I seeks rescission of the Put Option Agreement and the Share Charge Agreement; Count II seeks rescission of the Put Option Agreement and the Share Charge Agreement; and Count III seeks rescission of the Put Option Agreement and the Share Charge Agreement and/or damages [ECF No. 20 ¶¶ 48–74].

More recently, ISEI sent a letter to the Board of Eagle on July 15, 2025, requesting removal of board members appointed by Plaintiff and execution of the stock transfer pursuant to the Share Charge Agreement, prompting both the Instant Motion and Plaintiff's intent to seek the same injunctive relief requested here in the English Proceeding [ECF No. 27-2; ECF No. 31 p. 1].[5] The Motion is ripe for review.

## LEGAL STANDARDS

*Preliminary Injunctive Relief*

---

[5] No party has further explained the status of Plaintiff's ongoing request for similar injunctive relief in the English Proceeding.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation marks omitted). A party seeking a preliminary injunction must therefore establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing cases).

As part of the injunctive-relief evaluation, courts may consider a nonmovant's asserted defenses in weighing the movant's likelihood of success on the merits. *See Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 308 (7th Cir. 2010); *Abbott Lab'ys v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1335 (Fed. Cir. 2006); *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 264 (3d Cir. 2000); *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 157 (7th Cir. 1993) (noting district court's denial of plaintiffs' motion for preliminary injunction "based upon lack of success on the merits due to the presumptive validity of forum selection clauses contained in contractual agreements").

*Forum-Selection Clauses*

"[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (internal quotation marks and brackets omitted). Reliable "'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 33 (1988) (Kennedy, J., concurring).

This strong presumption in favor of enforcement extends to agreements that are international in nature. To encourage "the expansion of American business and industry" and prevent undue judicial interference with foreign commerce, the Supreme Court held in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), that the forum-selection clauses contained within international agreements "are prima facie valid" and shall be enforced unless the resisting party "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 9; *see generally id.* at 9–15; *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (emphasizing that burden is on the resisting party to justify deviation from enforcement). Now known as the "*Bremen* test," courts will disregard international forum-selection clauses only when: "(1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the provisions would contravene a strong public policy." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1292 (11th Cir. 1998) (citing *Bremen*, 407 U.S. at 15–18).

In part because of this strong presumption in favor of enforcing private parties' choice of forum, courts have generally declined to render forum selection clauses unenforceable even in the face of a so-called "anti-waiver provision." Anti-waiver provisions in the law generally forbid private contracts that purport to waive compliance with substantive obligations imposed by an underlying law. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 228 (1987). The Securities Exchange Act of 1934 as raised in Count I of the Amended Complaint contains such an anti-waiver provision—15 U.S.C. § 78cc(a)—which, as noted, bars a contractual waiver of the substantive obligations of the Act but does not forbid parties' decision to waive particular

procedures for enforcing such substantive duties. *McMahon*, 482 U.S. at 228 (rejecting argument that arbitration agreement effected an impermissible waiver of the Exchange Act's substantive protections). As relevant here, circuit courts have applied the *Bremen* test to examine the enforceability of forum-selection clauses notwithstanding the Securities Act's anti-waiver provision. *See e.g.*, *Bonny*, 3 F.3d at 156; *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992); *Haynsworth v. The Corp.*, 121 F.3d 956, 967 (5th Cir. 1997). And most relevant to that point, in *Lipcon*, the Eleventh Circuit determined that, despite the "plain language of the anti-waiver provisions [in the Securities Act], precedent and policy considerations compel [the conclusion] that *Bremen*'s framework for evaluating choice clauses in international agreements governs." 148 F.3d at 1292. This conclusion postdates the Supreme Court's opinion in *Scherk v. Alberto–Culver Co.*, 417 U.S. 506 (1974), which applied *Bremen* to a federal securities action. There, the Supreme Court emphasized that a forum-selection clause is "'an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction.'" *Lipcon*, 148 F.3d at 1293 (quoting *Scherk*, 417 U.S. at 516).

In sum, forum-selection clauses in international agreements are presumptively valid—a presumption that may be overcome only by a clear showing by the resisting party that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Bremen*, 407 U.S. at 15; *see also Bonny*, 3 F.3d at 156; *Haynsworth*, 121 F.3d at 967.

## DISCUSSION

Plaintiff seeks injunctive relief to stop Defendants from exercising rights to Plaintiff's controlling shares in Eagle pursuant to the Put Option and Share Charge Agreements [ECF No. 27]. The opening Motion makes almost no reference to the forum selection clauses in the

respective agreements, except to acknowledge that the Agreements "specify[] the courts of England as the exclusive forum for resolving disputes about those agreements" [ECF No. 27 p. 14 n. 4]. According to Plaintiff, however, those clauses pose no bar to obtaining the requested emergency injunctive relief in this action, because his claims concern fraud in entering contracts—not interpretation of those agreements [ECF No. 36 p. 4 ("Plaintiff does not dispute that the parties' competing claims about interpretation of the contracts should be litigated in England. And Plaintiff is not asking this Court to interpret the agreements or determine whether the parties have complied with them. Instead, the issue in this case is whether the agreements were procured by fraud and are therefore invalid.")]. Plaintiff even goes so far as to characterize Defendants' forum-selection argument as "irrelevant" [ECF No. 36 p. 3 ("Defendants' argument that disputes arising under the contracts themselves must be litigated in England is irrelevant.")].

Defendants oppose the Motion on various grounds—but they raise as their principal defense the enforceability of the three forum-selection clauses in the respective agreements [ECF No. 32 pp. 12–14; ECF No. 32 p. 3 ("This Court's analysis should start and end with these clauses.")]. In Defendants' view, the plain terms of those provisions are enough to resolve the Motion because "Plaintiff has not met his burden to show that enforcement of the forum-selection clause would be unfair or unreasonable" [ECF No. 32 p. 13]. In addition, anticipating the anti-waiver provision of the Securities Act, Defendants point to authorities that support enforcement of forum-selection clauses notwithstanding such an anti-waiver provision [ECF No. 32 pp. 12–13 (citing *Bonny*, 3 F.3d at 162 ].

In Reply, Plaintiff attempts to distinguish the authorities applying *Bremen* in the context of anti-waiver provisions, essentially arguing that (1) the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), "provides a bright-line test for when the

9

Exchange Act applies," and (2) enforcing the forum-selection clause here would "allow[] someone to contract around the application of the Exchange Act" [ECF No. 36 pp. 4–6; ECF No. 43 p. 3]. As best the Court can tell, Plaintiff is arguing that *Morrison*'s exterritoriality test somehow renders inapplicable the caselaw applying *Bremen* and enforcing forum-selection clauses despite the Securities Act's anti-waiver provision [ECF No. 36 pp. 4–6; ECF No. 43 p. 3]. And then in Sur-Reply, Defendants emphasize again the enforceability of the forum selection clauses and point to binding authority that remains undisturbed by *Morrison* [ECF No. 40 p. 3].

Upon review of the parties' arguments and the applicable authorities, the Court agrees with Defendants that the forum-selection clauses compel denial of Plaintiff's Emergency Motion. *Lipcon* 148 F.3d at 1296; *Bremen,* 407 U.S. at 15–18.

Starting with the first *Bremen* factor—whether the formation of forum-selection clauses was "induced by fraud or overreaching," *Lipcon*, 148 F.3d at 1296—Plaintiff has not shown, and never specifically pleads or argues, that the forum selection clauses themselves are the product of fraud [*see* ECF No. 40 p. 4 (Defendants' sur-reply correctly identifying this point)]. This acknowledgment is significant. Indeed, for Plaintiff to make a fraud-type showing under *Bremen*, Plaintiff would have to "specifically [] allege that the choice clause itself was included in the contract due to fraud," *Lipcon*, 148 F.3d at 1296 (citing *Scherk*, 417 U.S. at 519 n.14) (emphasis in original). But no such specific challenge exists in the First Amended Complaint [ECF No. 20; ECF No. 36 p. 9; ECF No. 43 p. 4]. And while Plaintiff raises a general claim of fraudulent inducement as to the agreements themselves (based upon allegations that Defendants misrepresented the likelihood of obtaining requisite financing) [ECF No. 20], at no time in the extensive briefing on the Motion has Plaintiff ever targeted as fraudulent the forum selection clauses contained within those agreements. *See also Don't Look Media LLC v. Fly Victor Ltd.*,

999 F.3d 1284, 1298 (11th Cir. 2021) (rejecting fraud argument based on entire scheme rather than that the clause itself).[6] The first *Bremen* factor counsels strongly in favor of enforcement of the forum-selection clauses.

Second, Plaintiff is not effectively "deprived of [his] day in court because of the inconvenience or unfairness of the chosen forum." *Lipcon*, 148 F.3d at 1296 (citing *Bremen*, 407 U.S. at 15–18). In fact, Plaintiff filed for the same emergency relief in the English Proceeding, evidencing his understanding that the same relief is available in the contracted-for forum. Nor does the record support a claim that the English Proceedings is somehow unduly inconvenient, where Plaintiff himself incorporated Eagle under the laws of England and is currently defending an action against Defendants in that very forum. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (noting the "heavy burden of proof," required to set aside the clause on grounds of inconvenience and declining to set aside clause on those grounds). The second factor strongly supports enforcement of the forum selection clauses.

Third, there is no "fundamental unfairness of the chosen law [that] would deprive the plaintiff of a remedy." *Lipcon*, 148 F.3d at 1296. This flows from the Eleventh Circuit's binding decision in *Lipcon*, which expressly determines that English law provides adequate remedies to address federal securities law claims, even if those remedies are less favorable than the remedies available in United States courts. *Id.* ("Like the seven other courts of appeals that have addressed this issue, we hold that English law provides remedies adequate to address the complaints of the aggrieved Names."). And it makes equal sense here, where Plaintiff himself invokes English law, choosing to plead one of his fraud claims under English Common Law [*see* ECF No. 20]. More

---

[6] In fact, Plaintiff fully acknowledges the clauses' validity as applied to matters of contractual interpretation, choosing instead essentially to carve up the clauses selectively to exclude his federal securities act claim [*see* ECF No. 36 p. 4].

generally, there is no suggestion by Plaintiff—and certainly no reason to believe—that English courts "are so inadequate that enforcement would be fundamentally unfair." *Lipcon*, 148 F.3d at 1297. Accordingly, there has been no showing of "fundamental unfairness" sufficient to meet the third prong of the *Bremen* test. *See id.* at 1298 (citing cases); *see also Bonny*, 3 F.3d at 162 (finding adequate remedy for securities violations in English law); *Haynsworth*, 121 F.3d at 967 (observing that, "to insist on the application of American securities law where the laws of the parties' agreed-upon forum meet this concern[,] would be the very height of the parochialism that *Bremen* condemned").

The fourth and final factor asks whether enforcement of the forum selection clauses "would contravene a strong public policy." *Lipcon*, 148 F.3d at 1296. Plaintiff tries to make a public policy-oriented argument that enforcement of the clauses would leave him without a forum, relying on the anti-waiver provision in the Exchange Act [ECF No. 36 pp. 4–5]. But the Eleventh Circuit—and various other circuits—have already rejected the argument that enforcement of a forum selection clause would run afoul of the "policy expressed in the anti-waiver provisions of the United States securities laws that substantive remedies be available for securities violations." *Id*. at 1298. This reflects the conclusion *supra* that "compensatory policy underlying United States securities law will be vindicated by litigation in English courts under English law." *Id.* at 1299. Accordingly, the unavailability of a United States forum in which to bring a federal Securities Act claim is insufficient, without more, to overcome enforcement of a valid forum selection clause. *Id.*; *see Riley*, 969 F.2d at 958 (upholding forum-selection clause although the plaintiff may "have

to structure his case differently than if proceeding in federal district court"). The Court finds no strong public policy barrier to enforcement of the forum selection clauses.[7]

For these reasons, applying the *Bremen* test and its progeny, Plaintiff has not met his strong burden to show that enforcement of the forum selection clauses would be unreasonable under the circumstances. The consequence of that failure is that the Court is constrained to deny Plaintiff's request for injunctive relief.[8]

---

[7] To the extent Plaintiff suggests that the Agreements are not "truly international agreement[s]," *Scherk*, 417 U.S. at 515, the Court disagrees. Plaintiff is a U.S. resident who was physically present when the parties negotiated the Put Option Agreement [ECF No. 20 ¶¶ 3, 8]. And one of the two individual defendants is alleged to reside in the United States [ECF No. 20 ¶ 5]. But there is ample countervailing evidence to suggest that a significant aspect of the parties' transactions is international in nature. Defendant ISEI, the sole corporate defendant, is incorporated in the Cayman Islands; Defendant Knaster is a resident of England; Plaintiff's own company and subject of the requested emergency relief is incorporated under the laws of England and Wales; an important piece of the subject matter of the disputed agreements concerns Plaintiff's aggregated interests in international soccer teams located in numerous countries; and the alleged fraudulent statements revolve around Russian individuals and sanctions by several foreign governments [ECF No. 20]. *See Lipcon*, 148 F.3d at 1293 n.14 (concluding that a transaction was 'truly international' where the parties are from different countries and the subject matter was international in nature). In any event, even if there were room to debate the "international" nature of the Agreements, Plaintiff has not offered a sufficient basis at this juncture to depart from the strong presumption in favor of enforcing valid forum-selection clauses entered into freely by sophisticated parties. *Cf. Atl. Marine Const. Co.*, 571 U.S. at 64.

[8] Rather than confront the *Bremen* factors, Plaintiff spends the majority of his briefing attempting to convince the Court not to apply them at all, necessarily requiring the Court to conclude that *Lipcon* and related cases do not apply. Specifically, Plaintiff argues in his replies that international forum-selection clauses are inapplicable in this context if the transaction meets what he describes as the Supreme Court's "bright-line test" in *Morrison* [ECF No. 36 pp. 4–6; ECF No. 43 p. 3]. *Morrison*, 561 U.S. at 265. The Court is not persuaded. *Morrison* limits extraterritorial application of the Securities Act to "only transactions in securities listed on domestic exchanges, and domestic transactions in other securities"—nothing more. *Id*. at 267. Any so called "bright-line test" from *Morrison* determines only whether there exists a cause of action under the Securities Act for a given transaction, not whether that cause of action may be directed to a separate forum by virtue of a contract's forum selection clause [ECF No. 40 p. 2]. More broadly, *Morrison* does not disturb *Lipcon*'s conclusion that parties may choose an international forum and not run afoul of the Securities Act's anti-waiver provision, provided the *Bremen* factors support enforcement (as is the case here). Ultimately, Plaintiff's *Morrison*-based argument repackages the idea that enforcing the forum-selection clauses makes it legally impossible for him to bring a claim under the

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 27] is **DENIED**.[9]

2. This Order should not be read as a final determination of Plaintiff's claims or Defendants' defenses.

3. On or before **August 19**, **2025**, Defendants shall submit a single combined response or separate answers to Plaintiff's Amended Complaint [ECF No. 20].

**ORDERED** in Chambers at Fort Pierce, Florida, this 28th day of July 2025.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record

---

Securities Act. But that outcome is both practically reasonable given his nearly identical claim of English common law fraud [ECF No. 20] and legally insufficient to avoid enforcement according to the Eleventh Circuit. *See Lipcon*, 148 F.3d at 1299; *Don't Look Media LLC*, 999 F.3d at 1299 (enforcing forum-selection clause where plaintiff argued that England does not have civil RICO cause of action and thus enforcement would be unfair).

[9] In light of this Order and the threshold nature of the forum selection clauses, the Court need not address the substantive merits of Plaintiff's underlying allegations of fraud or the remaining preliminary injunction factors. *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) (stating that if the moving party "is unable to show a substantial likelihood of success on the merits, we need not consider the other requirements").