## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 2:25-cv-14239

JOHN TEXTOR,

      Plaintiff,

vs.

ICONIC SPORTS EAGLE INVESTMENT
LLC, JAMES G. DINAN, and ALEXANDER
KNASTER,

      Defendants.

## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT
## PURSUANT TO FORUM NON CONVENIENS AND FED. R. CIV. P. 12(B)(6)

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................... 1

Factual Background ............................................................................................... 3

I.      The Parties Enter Three Agreements Governing ISEI's Investment In Eagle. .......... 3

II.     The Three Agreements Require All Disputes To Be Heard In English Courts .......... 5

III.    The De-SPAC Transaction Does Not Occur, and ISEI Invokes The Put
        Option ......................................................................................................... 6

IV.     ISEI Files Litigation Against Plaintiff In England, Seeking Specific
        Performance Of The Agreements. .................................................................... 6

V.      Plaintiff Then Files An Improper Complaint In Florida Alleging Fraud. ................. 6

VI.     Plaintiff Seeks Injunctive Relief, Which The Court Denies. ................................. 8

Argument ............................................................................................................... 8

I.      The Mandatory Forum-Selection Clauses Compel Dismissal Of The
        Amended Complaint Under Forum Non Conveniens. ......................................... 8

II.     The Amended Complaint Fails To State A Claim. ........................................... 11

        A.      The Amended Complaint Fails To Satisfy Rule 9(b) Pleading Standards. .......... 12

        B.      The Amended Complaint Fails To Plead A Federal Securities Fraud
                Claim. ........................................................................................... 14

                1.      The Amended Complaint Does Not Sufficiently Plead A Material
                        Misrepresentation. .............................................................. 14

                2.      The Amended Complaint Does Not Sufficiently Plead Scienter. ............. 17

                3.      The Amended Complaint Does Not Sufficiently Plead Loss
                        Causation. ........................................................................ 18

        C.      That Amended Complaint Fails To Plead A Florida Securities Fraud
                Claim. ........................................................................................... 19

        D.      That Amended Complaint Fails To Plead Fraud Under English Law. ................. 19

III.    The Complaint Should Be Dismissed With Prejudice. ...................................... 20

CONCLUSION ...................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. United Life Ins. Co. v. Martinez,*
    480 F.3d 1043 (11th Cir. 2007) .......................................................................13

*Angelini v. Gonzalez,*
    2017 WL 10242455 (S.D. Fla. June 8, 2017) ...................................................19

*Annunziato v. Guthrie,*
    2021 WL 5015496 (C.D. Cal. Oct. 26, 2021) ..................................................20

*Apollo Mgmt. Grp. v. Croxall,*
    2023 WL 11799718 (S.D. Fla. Mar. 29, 2023) ................................................12

*Arnold v. McFall,*
    839 F. Supp. 2d 1281 (S.D. Fla. 2011) ............................................................19

*Asset Recovery Mgmt., Inc. v. United Yacht Transp. LLC,*
    2021 WL 8743855 (S.D. Fla. Jan. 3, 2021) (Cannon, J.) ...........................8, 11

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,*
    571 U.S. 49 (2013) .......................................................................................1, 8

*Bonny v. Soc'y of Lloyd's,*
    3 F.3d 156 (7th Cir. 1993) ...............................................................................10

*In re BP P.L.C. Sec. Litig.,*
    2013 WL 6383968 (S.D. Tex. Dec. 5, 2013) ...................................................20

*Bradley v. Peters,*
    2020 WL 6381804 (S.D. Fla. Oc. 30, 2020) ...................................................20

*Carnival Cruise Lines, Inc. v. Shute,*
    499 U.S. 585 (1991) ..........................................................................................9

*Carvelli v. Ocwen Fin. Corp.,*
    934 F.3d 1307 (11th Cir. 2019) ......................................................11, 14, 15, 16

*Corsello v. Lincare, Inc.,*
    428 F.3d 1008 (11th Cir. 2005) .......................................................................13

*Divine Serenity Shop, Inc. v. Plant Identification Inc.,*
    2025 WL 1370348 (M.D. Fla. May 12, 2025) .................................................20

*Don't Look Media LLC v. Fly Victor Ltd.*,
   999 F.3d 1284 (11th Cir. 2021) .................................................................9

*Fineman v. Ferragamo USA Inc.*,
   672 F. Supp. 3d 1302 (S.D. Fla. 2023) (Cannon, J.)................................11

*Flamenbaum v. Orient Lines, Inc.*,
   2004 WL 1773207 (S.D. Fla. July 20, 2004)..........................................12

*Garfield v. NDC Health Corp.*,
   466 F.3d 1255 (11th Cir. 2006) ...............................................................19

*Gnanaraj v. Lilium N.V.*,
   2024 WL 3916758 (S.D. Fla. Aug. 23, 2024)...........................................15

*Hale v. Fr. LURSSEN WERFT GmbH & Co. KG*,
   2010 WL 11601558 (S.D. Fla. Apr. 26, 2010) .........................................11

*Harris v. Ivax Corp.*,
   182 F.3d 799 (11th Cir. 1999) .................................................................14

*Henningsen v. ADT Corp.*,
   161 F. Supp. 3d 1161 (S.D. Fla. 2015) ....................................................14

*IBEW Loc. 595 Pension & Money Purchase Pension Plans v. ADT Corp.*,
   600 F. App'x 850 (11th Cir. 2016) ...........................................................17

*Kava Culture Franchise Grp. Corp. v. Dar-Jkta Enters. LLC*,
   2023 WL 3568598 (M.D. Fla. May 18, 2023)............................................9

*Leon v. Cont'l AG*,
   301 F. Supp. 3d 1203 (S.D. Fla. 2017) ....................................................11

*Lipcon v. Underwriters at Lloyd's, London*,
   148 F.3d 1285 (11th Cir. 1998) ...........................................................9, 10

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972)...............................................................................2, 9, 10

*MacPhee v. MiMedx Grp., Inc.*,
   73 F.4th 1220 (11th Cir. 2023) ................................................................18

*Meyer v. Greene*,
   710 F.3d 1189 (11th Cir. 2013) ...............................................................19

*Mizzaro v. Home Depot, Inc.*,
   544 F.3d 1230 (11th Cir. 2008) ...............................................11, 17, 18

*Mogensen v. Body Cent. Corp.*,
  15 F. Supp. 3d 1191 (M.D. Fla. 2014) ....................................................................17

*In re Ocwen Fin. Corp. Sec. Litig.*,
  2017 WL 11680454 (S.D. Fla. June 14, 2017) .......................................................15

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
  297 F.3d 1182 (11th Cir. 2002) ......................................................................11, 20

*S.E.C. v. Zandford*,
  535 U.S. 813 (2002)..................................................................................................14

*In re Tech. Chemicals Sec. Litig.*,
  2000 WL 1222025 (S.D. Fla. July 3, 2000)............................................................16

*Ward v. Atl. Sec. Bank*,
  777 So. 2d 1144 (Fla. Dist. Ct. App. 2001) ..........................................................19

**Statutes**

15 U.S.C. § 78u–4(b)(2)(A) .............................................................................................17

Florida Securities and Investor Protection Act .............................................................19

Private Securities Litigation Reform Act (PSLRA)...........................................11, 12, 17

Securities Exchange Act Section 10(b)...............................................................6, 13, 14, 17

**Rules**

Rule 8(a).............................................................................................................................20

Rule 9(b) ........................................................................................................... *passim*

Rule 10(b) .........................................................................................................................20

Rule 10b–5 ......................................................................................................... *passim*

Rule 12(b)(6).....................................................................................................................11

## INTRODUCTION

Plaintiff's lawsuit belongs in England.  All three agreements referenced in the Amended Complaint contain forum-selection clauses, "the contractual validity of which Plaintiff does not specifically challenge," as this Court held.[1]  (ECF No. 45, "TRO Order," at 4.)  The not one, not two, but ***three*** forum-selection clauses, to which Plaintiff agreed, mandate that English courts have exclusive jurisdiction over disputes arising out of the agreements.  (Ex. A,[2] ¶ 13.10, Put Option Agreement; Ex. B, ¶ 22.2 Share Charge Agreement; Ex. C, ¶ 34, SSHA.)  Plaintiff further agreed that because it was so obvious that "the courts of England are the most appropriate and convenient courts to settle Disputes between [Plaintiff and ISEI]," that he would "not argue to the contrary." (Ex. B, ¶ 22.3 Share Charge Agreement.)  Indeed, Plaintiff is actively participating in parallel litigation filed first by ISEI ***in England***, thereby acknowledging that English courts have jurisdiction over this dispute.  In fact, in those proceedings, Plaintiff asked the English Court to grant the same injunction he previously sought in this Court one day after this Court denied his Emergency Motion based on the English forum-selection clauses. This is not surprising given that Plaintiff's claims arise from ISEI's $75 million investment in a company, Eagle, that Plaintiff himself incorporated in England and Wales, and even the Amended Complaint asserts that English law should apply.  What *is* surprising is that Plaintiff continues to pursue this litigation in this Court, knowing it is not the proper forum.[3]

---

[1]  Unless otherwise noted, capitalized terms take the meanings from the TRO Order, and all emphases is added.

[2]  Exhibits referenced herein are annexed to the Declaration of Marianna Chapleau.

[3]  Defendants asked Plaintiff to withdraw his complaint in light of this Court's holding on the forum-selection clauses in the TRO Order.  (Ex. H, Aug. 6 Atkinson Ltr. to Tuchmann.) Plaintiff refused but conceded that, if the Court "wishes to adhere to its earlier decision," then the Court could "issue a ruling granting the motion to dismiss for the reasons already stated in its decision denying a preliminary injunction due to the forum selection clause."  (Ex. I, Aug. 8 Tuchmann Ltr. to Atkinson.)

The Supreme Court has held that valid forum-selection clauses must be given "controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (quotation omitted). This is not an exceptional case. The Amended Complaint does not sufficiently allege that these forum-selection clauses should be disregarded because of fraud or any other reason—in fact, the Amended Complaint does not mention them at all. Nor can Plaintiff allege he would be deprived of his day in court if the Court dismissed his Amended Complaint, given that parallel proceedings are ongoing in England, the proper forum. Moreover, Plaintiff would not be deprived of a remedy because English remedies are adequate to provide redress for fraud claims, which Plaintiff himself admits by "choosing to plead one of his fraud claims under English Common Law." (TRO Order at 11.) Public policy also does not preclude enforcement of the forum-selection clauses here; to the contrary, public policy counsels strongly in favor of enforcement, given that courts must respect the "solemn contracts" between parties—particularly international contracts—or else "[t]he expansion of American business and industry will hardly be encouraged." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972). Thus, the Court cannot disregard "the parties' undisputed forum selection clauses" and should dismiss the Amended Complaint for the same reasons it denied Plaintiff's Emergency Motion. (TRO Order at 1-2.)

Even if the Court were to entertain the Amended Complaint, Plaintiff has failed to plead fraud. At the outset, the Amended Complaint's allegations fail to satisfy the heightened pleading standards applicable to all fraud claims because they do not identify when, where, and by whom the statements were made as required by Rule 9(b) for all fraud claims. Furthermore, the crux of Plaintiff's claims is that, after ISEI invested $75 million into Plaintiff's company, ISEI tricked him into signing agreements that would allow ISEI to get its money back if the contemplated De-SPAC

transaction did not occur.  Plaintiff alleges that statements about the probability that a De-SPAC transaction likely would occur in the future were fraudulent because Defendants allegedly knew that a De-SPAC transaction was "impossible" because no banks would do business with Defendants because of their alleged associations with Russians.  Noticeably missing from Plaintiff's alleged fraud scheme is a motive.  If the De-SPAC transaction did not occur, the contracts only allow ISEI to get its money back—***without interest***—if Plaintiff repurchased ISEI's shares when ISEI gave notice.  In other words, ISEI's alleged fraud would make ISEI no money and, in fact, leave ISEI worse off, having lost out on other investment opportunities for the $75 million.  Moreover, each of the identified statements is the type of forward-looking, puffery, or opinion statements that is not actionable under federal and state securities law, and the Amended Complaint otherwise fails to sufficiently plead scienter and loss causation.

For these reasons, the Court should dismiss the Amended Complaint with prejudice.[4]

## FACTUAL BACKGROUND

### I.      The Parties Enter Three Agreements Governing ISEI's Investment In Eagle.

In November 2022, Plaintiff founded Eagle to purchase a controlling stake in a French football club, OL.  First Amended Complaint ("FAC") ¶ 14.  As part of the formation of Eagle, Plaintiff requested and received a $75 million investment from ISEI.  *Id.* ¶¶ 14-16.  This money allowed Plaintiff to complete the purchase of OL.  *Id.* ¶ 14.  In return, ISEI received certain assurances from Plaintiff.  The parties memorialized this transaction in three agreements:

---

[4]   Defendants reserve all rights to seek further relief based on Plaintiff's failure to disclose to the Court the existence of the forum-selection clauses in his Complaint and Amended Complaint, his failure to timely withdraw the Amended Complaint after the Court's denial of the Emergency Motion based on forum non conveniens, and his filing litigation in Florida in breach of his contractual obligations.

*Subscription and Shareholders' Agreement.*   In the Subscription and Shareholders' Agreement ("SSHA") dated November 16, 2022, amended on December 9, 2022, ISEI received 8,520 shares of Eagle (the "Eagle Shares"), or 19.10% of the Company, while Plaintiff remained its majority shareholder.  *Id.* ¶ 15.7.  The SSHA provided that Eagle and Iconic Sports Acquisition Corp—the Special Purpose Acquisition Company ("SPAC") under common control of the shareholders of ISEI—would "immediately take active steps to prepare for and pursue a business combination" to take Eagle public (the "De-SPAC Transaction").  *Id.* ¶ 17.  The SSHA provided that the only condition to the De-SPAC Transaction would be the SPAC having "a firm commitment of additional equity financing committed from Private Investment in Public Equity ('PIPE') investors of at least $60,000,000 through the issuance of ordinary shares at no less than $8.50 per share."  *Id.* ¶ 24.

*Put Option Agreement.*   Simultaneously, on November 16, 2022, ISEI and Plaintiff entered into the Put Option Agreement.  *Id.* ¶ 21.  If the De-SPAC Transaction occurred, ISEI could sell its Eagle Shares on a publicly traded exchange.  *See id.* ¶ 25.  However, "the Put Option Agreement was an '*insurance policy*' for [Defendants] against the *possibilities* . . . that the De-SPAC Transaction would *not* occur."  *Id*.  Under such circumstances, the Put Option Agreement granted ISEI a put option (the "Option") to sell its Eagle Shares back to Plaintiff for $75 million—the same amount of money ISEI paid for the shares—"plus interest of 11% per annum, ***accruing from the date that ISEI delivered notice*** that it was exercising the put option."  *Id.* ¶ 23.  This condition is significant because, if Plaintiff paid ISEI back its $75 million on the date that ISEI delivered notice, ISEI would not make any money off of the transaction and, if anything, would lose whatever money it could have made from investing its $75 million elsewhere.

***Share Charge Agreement.*** On December 8, 2022, Plaintiff and ISEI entered into the Share Charge Agreement. *Id.* ¶ 30. Again, if the De-SPAC Transaction did ***not*** occur for whatever reason, Plaintiff agreed that ISEI would obtain a secured interest in ***Plaintiff's*** Eagle shares if ISEI exercised the Option and Plaintiff failed to repurchase the shares within the requisite 1 year period. *Id.* ¶¶ 31-32. At that point, ISEI would be entitled to exercise the powers and rights conferred on or exercisable by the legal or beneficial owner of Plaintiff's shares by executing a stock transfer form documenting the transfer. *Id.*

## II.     The Three Agreements Require All Disputes To Be Heard In English Courts

Plaintiff incorporated Eagle "under the laws of England and Wales." *Id.* ¶ 3. So, the three agreements governing ISEI's investment in Eagle each contain a forum-selection clause mandating exclusive jurisdiction in courts of England.

> This agreement shall be governed by and construed in accordance with English law and the parties hereby submit to ***the exclusive jurisdiction of the English courts***. (Ex. A, ¶ 13.10 Put Option Agreement.)

> ***The courts of England have exclusive jurisdiction*** to settle any dispute arising out of or in connection with this Share Charge (including a dispute relating to the existence, validity or termination of this Share Charge or the consequences of its nullity or any non-contractual obligation arising out of or in connection with this Share Charge (a "Dispute")). ***The parties agree that the courts of England are the most appropriate and convenient courts to settle Disputes between them and, accordingly, that they will not argue to the contrary***. (Ex. B, ¶ 22 Share Charge Agreement.)

> The parties irrevocably agree that ***the courts of England and Wales shall have exclusive jurisdiction*** to settle any claim dispute or issue (including non-contractual claims) which may arise out of or in connection with this agreement. (Ex. C, ¶ 34, SSHA.)

(TRO Order at 4.) The Amended Complaint does not mention—let alone challenge the "contractual validity" of—these provisions. *Id.*

5

### III.     The De-SPAC Transaction Does Not Occur, and ISEI Invokes The Put Option.

Without explaining why, Plaintiff asserts: "ISEI did not exercise the De-SPAC Option by April 26, 2023, and on July 26, 2023, ISEI provided Textor with notice that it was purporting to invoke the Put Option, which required Plaintiff to purchase the Iconic Shares." *Id.* ¶ 29.

### IV.     ISEI Files Litigation Against Plaintiff In England, Seeking Specific Performance Of The Agreements.

On July 3, 2025, ISEI filed litigation against Plaintiff in England, pursuant to the terms of the agreements.  (Ex. D, English Complaint.)  ISEI seeks specific performance of Plaintiff's obligation to purchase the Eagle Shares from ISEI for $75 million plus interest.  *Id.*

### V.     Plaintiff Then Files An Improper Complaint In Florida Alleging Fraud.

After ISEI filed its complaint in England, Plaintiff filed his Complaint in this Court.  (ECF No. 1.)  On July 11, 2025, the Court dismissed the Complaint *sua sponte* because it was an impermissible "shotgun pleading."  (ECF No. 18 at 1.)  Plaintiff then filed his Amended Complaint.  (ECF No. 20.)  The Amended Complaint asserts three counts: (1) violation of Section 10(b) of the Securities Exchange Act and Rule 10b–5, (2) violation of Florida securities law, and (3) "Fraudulent Misrepresentation / Deceit under English Law." *Id.*  Plaintiff thus asks this Court to apply federal law, Florida law, and English law to this dispute arising from the agreements. Notably, the Amended Complaint asserts:  "The Put Option Agreement has a choice of law provision specifying that claims related to that agreement would be adjudicated under the laws of England." FAC ¶ 67.  But Plaintiff does not acknowledge the remainder of the sentence:  "***and*** the parties hereby submit to the exclusive jurisdiction of the English courts."  (Ex. A., ¶ 13.10) And despite seeking rescission of the Share Charge Agreement, the Amended Complaint omits that agreement's grant of "exclusive jurisdiction" to the English Courts "to settle any dispute arising out of or in connection with this Share Charge (***including a dispute relating to the***

*existence, validity or termination of this Share Charge or the consequences of its nullity or any*

*non-contractual obligation arising out of or in connection with this Share Charge* . . . .”). (Ex. B,

¶ 22 (emphasis added).)

Plaintiff seeks recission of the Put Option Agreement and Share Charge Agreement, among

other things, based on three alleged fraudulent misrepresentations made by Defendants.  The

Amended Complaint acknowledges that Plaintiff understood that “the De-SPAC Transaction

would be subject to, inter alia, additional financing on acceptable terms” obtained from third-party

banks, FAC ¶ 18, and that “Defendants represented to Textor that the Put Option Agreement was

an ‘insurance policy’ for them,” in the event the De-SPAC Transaction did ***not*** occur, *id.* ¶ 25.

Nevertheless, Plaintiff asserts for the first time nearly two years after Eagle decided not to pursue

the De-SPAC Transaction and ISEI delivered notice under the Put Option Agreement, that the

following three statements were fraudulent:

- “Prior to November 16, 2022, Defendants represented to Textor that … [it was] highly unlikely, that (a) ISEI would decline to exercise the De-SPAC Option, or (b) that the De-SPAC Transaction would not occur. … This representation was made to Textor by ISEI through Defendant Dinan, and by Defendant Knaster ….”  (*Id.*)

- “ISEI stated, upon making its investment in Eagle, that as the CEO of Eagle, Textor was the single person with the most control over whether the De-SPAC Transaction would occur.”  (*Id.* ¶ 26.)

- At some unspecified point in time, “Defendants falsely represented to Textor that they were having no difficulties conducting business with respected financial institutions and no trouble obtaining financing,” and “ISEI, through its agents … den[ied] that either market conditions or Knaster’s ties with sanctioned Russian individuals posed an issue for obtaining financing.”  (*Id.* ¶¶ 38, 44.)

Plaintiff alleges that these statements were fraudulent because Defendants collectively “knew and

did not disclose to Plaintiff” that “Defendant Knaster’s close financial ties with Russian individuals

and assets that were the subject of international sanctions ***made [a De-SPAC] transaction***

***impossible***.”  (*Id.* ¶ 2.)

## VI.     Plaintiff Seeks Injunctive Relief, Which The Court Denies.

On July 22, 2025, Plaintiff sought a preliminary injunction and temporary restraining order enjoining Defendants "from representing that they have any, or purporting to or otherwise attempting to exercise any, rights over Textor's shares in Eagle" and from "tak[ing] or permit[ting] any action or inaction intended to, or which could reasonably be expected to, interfere with Textor's exercise of control . . . over the Textor Shares."  (ECF No. 27.)

On July 28, the Court denied the Emergency Motion.  (TRO Order).  The Court observed that "forum-selection clauses in international agreements are presumptively valid—a presumption that may be overcome only by a clear showing by the resisting party that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  (*Id.* at 8 (quotation omitted).)  On this basis, the Court concluded that, "[u]pon review of the parties' arguments and the applicable authorities, the Court agrees with Defendants that the forum-selection clauses compel denial of Plaintiff's Emergency Motion."  (*Id.* at 10 (citations omitted).)

The next day, on July 29, Plaintiff filed an application seeking injunctive relief in the parallel proceedings brought by ISEI in England.  (Ex. E (Injunction Application)).

## <u>ARGUMENT</u>

## I.     The Mandatory Forum-Selection Clauses Compel Dismissal Of The Amended Complaint Under Forum Non Conveniens.

The Court should dismiss the Amended Complaint for forum non conveniens because the applicable forum-selection clauses require this dispute to be litigated in England.  Because forum-selection clauses are "bargained for by the parties," their enforcement "protects [the parties'] legitimate expectations and furthers vital interests of the justice system."  *Atl. Marine Const. Co.*, 571 U.S. at 63 (quotation omitted).  In fact, the presence of a forum-selection clause "requires courts to modify their *forum non conveniens* analysis in a motion to dismiss because forum choice

clauses almost always carry controlling weight." *Asset Recovery Mgmt., Inc. v. United Yacht Transp. LLC*, 2021 WL 8743855, at *2 (S.D. Fla. Jan. 3, 2021) (Cannon, J.) (citation omitted). "[A]lthough movants usually bear the burden of showing that transfer to another forum is warranted, the existence of a forum-selection clause shifts the burden to the non-moving party to demonstrate that the clause should be disregarded." *Id.* (citation omitted).  To do so, Plaintiff must show that "(1) the [forum-selection clauses'] formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4)  enforcement of the provisions would contravene a strong public policy." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1292 (11th Cir. 1998) (citing *Bremen*, 407 U.S. at 15–18).  Plaintiff cannot satisfy any of these factors.

*First*, Plaintiff has not made a "strong showing" that the inclusion of the forum-selection clauses ***specifically*** "was the product of fraud or coercion." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1298 (11th Cir. 2021) (citation omitted).  A party's "reliance on [a] broader alleged fraudulent scheme [to avoid a forum-selection clause] ... is a nonstarter.'" *Kava Culture Franchise Grp. Corp. v. Dar-Jkta Enters. LLC*, 2023 WL 3568598, at *2 (M.D. Fla. May 18, 2023) (citation omitted).  Here, the Court found that "Plaintiff has not shown, and never specifically pleads or argues, that the forum selection clauses themselves are the product of fraud"—an acknowledgement that the Court noted was "significant."  (TRO Order at 10.)  The fraud alleged in the Amended Complaint has nothing to do with the forum-selection clause, and Plaintiff even concedes that the Put Option Agreement provision is valid and enforceable by asserting in the Amended Complaint that the choice-of-law clause—that is part of the same sentence as the forum-

selection clause—applies to this dispute.  *See* FAC ¶ 67.  Thus, this factor "counsels strongly in favor of enforcement of the forum-selection clauses."  (TRO Order at 10–11.)

*Second*, Plaintiff cannot meet his "heavy burden of proof" establishing that the enforcement of the clauses "would operate to deprive [him] of [his] day in court," for example, if Plaintiff showed that he was "physically and financially incapable of pursuing the litigation in [England]." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589, 594-95 (1991) (citation omitted).  Here, Plaintiff most certainly will not be deprived of his day in Court if the Amended Complaint is dismissed.  Indeed, Plaintiff is actively litigating his rights under the same agreements in the first-filed lawsuit initiated by ISEI in English court, including seeking injunctive relief for a second time in that forum.  Therefore, this factor does not weigh in Plaintiff's favor.

*Third*, Plaintiff cannot show that "the remedies available in [England] are so inadequate that enforcement would be fundamentally unfair."  *Lipcon*, 148 F.3d at 1297.  In fact, courts generally have found that "English remedies are adequate to provide redress for the alleged actions that gave rise to [ ] United States securities claims."  *Id.* at 1298; *see also Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 161 (7th Cir. 1993) (finding adequate remedy for securities violations in English law). Plaintiff himself further seems to concede this point by "invok[ing] English law, choosing to plead one of his fraud claims under English Common Law" to address his grievances, as this Court observed.  (TRO Order at 11.)  Plaintiff therefore has failed to establish that litigating his claims in England would be fundamentally unfair.

*Fourth*, Plaintiff cannot meet his burden to show that enforcement of the forum-selection clauses would contravene public policy.  The Court already concluded that "the Eleventh Circuit— and various other circuits—have already rejected the argument that enforcement of a forum selection clause would run afoul of the 'policy expressed in the anti-waiver provisions of the

United States securities laws that substantive remedies be available for securities violations'" and that "the unavailability of a United States forum in which to bring a federal Securities Act claim is insufficient, without more, to overcome enforcement of a valid forum selection clause." (TRO Order at 12 (quoting *Lipcon*, 148 F.3d at 1299).) Plaintiff otherwise has raised no public policy reason why the forum-selection clauses should not be enforced, and, if anything, "[t]he elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting," weighing in favor of enforcement of the clauses. *Bremen*, 407 U.S. at 13-14. Additional public interest factors considered by courts—including "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law," *Asset Recovery Mgmt.*, 2021 WL 8743855 at *3—also weigh in favor of enforcement of the forum-selection clauses. Litigation is currently proceeding in English court, and, if any forum can claim this controversy as "local," it would be England, where Plaintiff incorporated Eagle and whose law governs all three agreements. *See Hale v. Fr. LURSSEN WERFT GmbH & Co. KG*, 2010 WL 11601558, at *3 (S.D. Fla. Apr. 26, 2010) ("England has an interest in interpreting its own law.").

In sum, Plaintiff has not met his burden to show that the forum-selection clauses should be disregarded, and the Court should dismiss the Amended Complaint for forum non conveniens.

## II.     The Amended Complaint Fails To State A Claim.

Under Rule 12(b)(6), the Court accepts Plaintiff's factual allegations as true and draws inferences in the light most favorable to Plaintiff. *Fineman v. Ferragamo USA Inc.*, 672 F. Supp. 3d 1302, 1306 (S.D. Fla. 2023) (Cannon, J.). However, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citation omitted).

### A. The Amended Complaint Fails To Satisfy Rule 9(b) Pleading Standards.

Because Plaintiff asserts three fraud claims, the Amended Complaint must satisfy the heightened pleading standards under Federal Rule of Civil Procedure 9(b).  *See Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019).  Rule 9(b) serves the important purposes of placing defendants accused of fraud on notice of the "precise misconduct with which they are charged" and "protecting defendants against spurious charges of immoral and fraudulent behavior." *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1226 (S.D. Fla. 2017); *see also Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (noting that Congress passed the PSLRA as "a check against abusive litigation by private parties").  Accordingly, Rule 9(b) requires Plaintiff

> to state with particularity the circumstances constituting fraud or mistake—which in the securities-fraud context, [ ] requires a plaintiff to allege specifically (1) which statements or omissions were made in which documents or oral representations; (2) when, where, and by whom the statements were made (or, in the case of omissions, not made); (3) the content of the statements or omissions and how they were misleading; and (4) what the defendant received as a result of the fraud.

*Id.*  Plaintiff's federal securities claim also must satisfy the pleading requirements imposed by the Private Securities Litigation Reform Act (PSLRA), which "requires a complaint to specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading" as well as, "with respect to each act or omission alleged, … facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (citations omitted).

Here, the Amended Complaint fails to plead fraud with particularity for each statement.

***"Highly Unlikely" De-SPAC Transaction Would Not Occur***
- <u>When</u>: at some point "[p]rior to November 16, 2022" (FAC ¶ 25.)
- <u>Where</u>:  Does not say; only that Plaintiff was in Florida.  (*Id.*)
- <u>By Whom</u>:  "by ISEI, through Defendant Dinan, and by Defendant Knaster" (*Id.*)

***Textor Had The "Most Control" Over Whether De-SPAC Transaction Would Occur***
- <u>When</u>:  "upon making its investment in Eagle" (*Id.* ¶ 26.)
- <u>Where</u>:  Does not say.
- <u>By Whom</u>:  "IESI" but identifies no person.  (*Id.*)

### *Defendants Were Having No Difficulties Conducting Business*

- <u>When</u>:  Does not say.
- <u>Where</u>:  Does not say.
- <u>By Whom</u>:  "Defendants" (*Id.* ¶ 38.) "ISEI, through its agents"  (*Id.* ¶ 44.)

These statements do not satisfy the requirements of Rule 9(b).  There is no specified time range given for any of the statements, and two statements provide no reference to time at all.  *See Flamenbaum v. Orient Lines, Inc.*, 2004 WL 1773207, at *6 (S.D. Fla. July 20, 2004) (Rule 9(b) requires giving a "narrow time frame" of when a misrepresentation was made).  The Amended Complaint also fails to specify where and how any of these statements were made.  *Apollo Mgmt. Grp. v. Croxall*, 2023 WL 11799718, at *4 (S.D. Fla. Mar. 29, 2023) (dismissing complaint that "fail[ed] to indicate whether the statements were made orally or in writing, and the place where they were made").  And, for each statement, the Amended Complaint fails to specify who the speaker was, engaging in impermissible group pleading and representing in one instance that a company made a representation.  *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) (holding that "claims fail to comport with the requirements of Rule 9(b)" because they fail to "identify the agents or corporate representatives who participated in the alleged fraud").

Plaintiff also fails to identify what Defendants received as a result of these alleged fraudulent statements.  ISEI invested $75 million into Eagle, reflecting its optimistic belief that the De-SPAC Transaction ***could*** occur.  Otherwise, ISEI was only entitled to its money back if Plaintiff returned the investment back to ISEI upon notice.  Defendants had ***nothing*** to gain if they did not genuinely believe that the De-SPAC Transaction could occur, and thus the Amended Complaint fails to specify what Defendants gained as a result of these statements.

The Amended Complaint's failure to satisfy Rule 9(b) alone requires its dismissal.  *Corsello v. Lincare, Inc*., 428 F.3d 1008, 1012 (11th Cir. 2005) (affirming Rule 9(b) dismissal).

**B.      The Amended Complaint Fails To Plead A Federal Securities Fraud Claim.**

The Amended Complaint fails to state a securities fraud claim under § 10(b) of the Securities Exchange Act and Rule 10b–5 because it fails to plead the required elements with the requisite particularity.   To state a claim, Plaintiff must sufficiently allege: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on a misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called loss causation." *Henningsen v. ADT Corp.,* 161 F. Supp. 3d 1161, 1180 (S.D. Fla. 2015) (quotation omitted).  The Amended Complaint fails to plead the first, second, and sixth elements.

**1.      The Amended Complaint Does Not Sufficiently Plead A Material Misrepresentation.**

Here, none of Defendants' alleged statements rises to the level of an actionable misrepresentation of material fact, so the Amended Complaint must be dismissed.

*"Highly Unlikely" De-SPAC Transaction Would Not Occur.*

- "Prior to November 16, 2022, Defendants represented to Textor that … [it was] highly unlikely, that (a) ISEI would decline to exercise the De-SPAC Option, or (b) that the De-SPAC Transaction would not occur. … This representation was made to Textor by ISEI through Defendant Dinan, and by Defendant Knaster …."  (FAC ¶ 25.)

To begin, this statement is a quintessential forward-looking statement.  Forward-looking statements that sound like "a prediction, projection, or plan" are excluded from liability under Rule 10b–5.  *Carvelli*, 934 F.3d at 1324.  Here, Plaintiff admits that a "necessary precondition" of the De-SPAC transaction was obtaining financing from third-party banks.  FAC ¶ 34.  Therefore, Defendants could not purport to know what would happen in the future with any certainty, and allegedly making predictive statements while negotiating cannot be considered statements of material **fact**.  *See Harris v. Ivax Corp.*, 182 F.3d 799, 803-5 (11th Cir. 1999) ("[W]hether [the company] is 'well positioned' is a statement whose truth can only be known after seeing how [the

14

company's] future plays out."). At most, Defendants were attempting to predict the future and could not have had any actual knowledge the statement was false because the parties knew that the transaction was dependent on the actions of third-party banks. A statement predicting the likelihood of future events falls within the safe harbor. *See, e.g.*, *Gnanaraj v. Lilium N.V.*, 2024 WL 3916758, at *10 (S.D. Fla. Aug. 23, 2024) (no liability for statements that "address what defendants expect[ ] to occur in the future." (quotation omitted)).

Furthermore, this statement is not material, as required. "Rule 10b–5 prohibits untrue statements of a material fact, with 'material' defined to mean something that a reasonable [person] would view as having significantly altered the total mix of information made available. Excessively vague, generalized, and optimistic comments … [are] not material." *Carvelli*, 934 F.3d at 1320 (citation omitted). Defendants allegedly made this statement while negotiating the Put Option Agreement, which the Amended Complaint admits Defendants thought of as "an insurance policy," *i.e.*, protection for them in case the De-SPAC transaction **did not** occur. The fact of the negotiation of the insurance policy means that Plaintiff knew there was a possibility that the De-SPAC transaction would not occur. In context, therefore, this statement was nothing more than an optimistic hope that a reasonable person would not have viewed as alternating the total mix of the information, which included that Defendants wanted to have an insurance policy in the first place. Plaintiff knew that there was a risk that the De-SPAC Transaction would not occur, and this alleged optimistic statement made while negotiating the insurance policy was not material.

### *Textor Had The "Most Control" Over Whether De-SPAC Transaction Would Occur*.

- "ISEI stated, upon making its investment in Eagle, that as the CEO of Eagle, Textor was the single person with the most control over whether the De-SPAC Transaction would occur." (FAC ¶ 26.)

As an initial matter, this statement is not actionable "because it was true." *In re Ocwen Fin. Corp. Sec. Litig.*, 2017 WL 11680454, at *4 (S.D. Fla. June 14, 2017). Plaintiff admits that,

even after ISEI purchased Eagle shares, he "maintained majority control of Eagle." (FAC ¶ 16.) Additionally, because the time period is vague ("upon making its investment in Eagle"), the Amended Complaint has not shown that Plaintiff, as CEO and majority shareholder, was ***not*** in the position with the most control over Eagle's future when the Put Option Agreement was signed. *In re Tech. Chemicals Sec. Litig.*, 2000 WL 1222025, at *7 (S.D. Fla. July 3, 2000) ("complaint must set forth an explanation as to why the disputed statement was untrue or misleading ***when made***." (emphasis in original) (cleaned up)). That the third-party banks ended up not financing the De-SPAC Transaction does not mean this statement was false at the time, and courts have rejected this "hindsight approach to alleging fraud." *Id.*

Moreover, this statement is an inactionable opinion. "[S]tatements of opinion are generally nonactionable because liability attaches only in the case of an untrue statement of a material ***fact***." *Carvelli*, 934 F.3d at 1322 (emphasis in original). An opinion cannot subject a defendant to securities fraud unless the (1) defendant did not hold the opinion or (2) opinion contained an untrue embedded fact. *Id.* at 1322. Here, this statement is opinion because it cannot be verified as fact who had "the most control" in this situation at this time. The only embedded fact in the statement—that Plaintiff was CEO of Eagle—is confirmed true by the Amended Complaint, and Plaintiff does not sufficiently allege that Defendants did not hold this opinion at the time that the Put Option Agreement was signed. Without more, any claim based on this statement must be dismissed. *See id.* at 1323 ("Here, [plaintiff] failed to allege facts with particularity that give rise to a strong inference that the defendants didn't truly believe what they asserted in the statements in question … Thus, [defendant's] statements of opinion aren't actionable under Rule 10b–5.").

*__Defendants Were Having No Difficulties Conducting Business__*.

- At some unspecified point in time, "Defendants falsely represented to Textor that they were having no difficulties conducting business with respected financial institutions and no trouble obtaining financing," and "ISEI, through its agents … den[ied] that either market conditions or Knaster's ties with sanctioned Russian individuals posed an issue for obtaining financing." (FAC ¶¶ 38, 44.)

Given how vague the statements are ("no trouble" and "posed an issue") and that they do not specify a time, the Amended Complaint does not sufficiently allege that these statements are false.  The Amended Complaint does not allege that ***at no time*** were Defendants "conducting business" and "obtaining financing."  In addition, these alleged statements are, at most, puffery, i.e., "generalized, non-verifiable, vaguely optimistic statements." *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1212-13 (M.D. Fla. 2014); *see also, e.g.*, *IBEW Loc. 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 600 F. App'x 850, 857 (11th Cir. 2016) ("[S]trong performance" is inactionable puffery); *Mogensen*, 15 F. Supp. 3d at 1213 ("[R]emain confident in long-term growth" is inactionable puffery).

Accordingly, none of the individual statements identified in the Amended Complaint is actionable, and Plaintiff's federal securities fraud claim must be dismissed.

### 2.    The Amended Complaint Does Not Sufficiently Plead Scienter.

Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2)(A).  In the Eleventh Circuit, "it is by now well-established that § 10(b) and Rule 10b–5 require a showing of either an intent to deceive, manipulate, or defraud, or severe recklessness." *Mizzaro*, 544 F.3d at 1238 (quotation omitted).  Moreover, "the complaint must allege facts supporting a strong inference of scienter for each defendant with respect to each violation." *Id.*  The Amended Complaint's conclusory allegations fail to satisfy these high standards.

Here, the Amended Complaint asserts that Defendants collectively knew of Knaster's previous business relationships and actively concealed those relationships because Defendants knew that the De-SPAC Transaction was "impossible" because of those relationships.  FAC ¶ 35.  Apart from the flawed logic of this theory—why would ISEI invest $75 million in a company that it knew was doomed to fail?—the Amended Complaint fails to articulate how each Defendant *knew* that the alleged prior businesses relationships of Knaster would make the De-SPAC Transaction impossible.  Instead, Plaintiff relies on generalized assertions of access and position, which the Eleventh Circuit has repeatedly held are insufficient.  *See Mizzaro* 544 F. 3d at 1250-51 (explaining plaintiff's "must have known" theory failed because "the amended complaint . . . must at least allege *some* facts showing how knowledge of the fraud would or should have percolated up to senior management.") (emphasis in original).  The absence of any particularized allegations showing intent or severe recklessness compels dismissal of this claim as a matter of law.

### 3.    The Amended Complaint Does Not Sufficiently Plead Loss Causation.

Plaintiff's federal securities claim fails for the additional independent reason that the alleged omission—that Knaster and Eisler had Russian ties—was already publicly available long before Plaintiff entered into the Put Option Agreement.  The Eleventh Circuit has consistently held that information "previously known to the market" cannot support a theory of either materiality or loss causation under the federal securities laws.  *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1246 (11th Cir. 2023) ("[P]ublicly available information is fatal to a claim of loss causation.").

Here, the Russian ties that Defendants allegedly failed to disclose in December 2022 were reported by major news outlets months before.  Indeed, in Spring 2022, both Bloomberg and the *Financial Times* reported on Knaster's alleged ties to sanctioned Russian individuals and the related complications.  (*See* Exs. F, G).  Because that information was publicly available prior to Plaintiff signing the Put Option Agreement, any alleged failure to disclose it cannot form the basis

of a securities fraud claim.  *See Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013) (no corrective disclosure because "everything disclosed … was already in the public domain").

**C.    That Amended Complaint Fails To Plead A Florida Securities Fraud Claim.**

Plaintiff's Florida Securities and Investor Protection Act ("FSIPA") claim must be dismissed for the same reasons as the federal securities claim.  "The elements of a cause of action under Section 301 are identical to those under Rule 10b–5 of the Exchange Act, except that the scienter requirement under Florida law is satisfied by [a] showing of mere negligence, and a plaintiff does not need to prove loss causation under Florida law."  *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011).  Nevertheless, given the similarities between the claims, Florida courts "look to interpretations of the federal securities laws for guidance in interpreting Florida's securities laws," *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1147 (Fla. Dist. Ct. App. 2001), and courts routinely apply the same analysis to both claims. *See e.g.*, *Angelini v. Gonzalez*, 2017 WL 10242455, at \*5 (S.D. Fla. June 8, 2017).  Additionally, because FSIPA claims sound in fraud, plaintiffs must also satisfy the pleading requirements of Rule 9(b).  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).  Therefore, the Amended Complaint fails to state a FSIPA claim for the same reasons as the federal securities claim, absent loss causation.  And even under the lower negligence standard for scienter, Plaintiff improperly instead relies on the conclusory allegation that Defendants behaved "knowingly or recklessly," which is insufficient to state a claim under the FSIPA.  *Arnold,* 839 F. Supp. 2d at 1287 (S.D. Fla. 2011) (dismissing FSIPA claim alleging defendants acted knowingly and recklessly because plaintiff failed "to allege *any* facts showing" defendants negligently made statements to plaintiff).  Plaintiff's FSIPA claim fails.

**D.    That Amended Complaint Fails To Plead Fraud Under English Law.**

Because the Amended Complaint fails to satisfy Rule 9(b), Plaintiff's fraud claim under English law necessarily fails too.  Moreover, courts have held that the "only significant deviations

between Rule 10(b), on the one hand, and Plaintiffs' English law claims, on the other, appear in the element of scienter." *In re BP P.L.C. Sec. Litig.*, 2013 WL 6383968, at *37 (S.D. Tex. Dec. 5, 2013). Under an English common law deceit claim, courts must "evaluate the allegations to determine whether they support a ***plausible*** inference of scienter, as required by Rule 8(a) and *Iqbal*." *Id.* (emphasis in original). But, even pursuant to Rule 8(a), a plaintiff may not rely on "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Thus, "[m]erely pleading that 'representations and promises were false when they were made,' and that a defendant 'knew . . . representations were false when they were made,' is insufficient to allege intent even under Rule 8(a)." *Annunziato v. Guthrie*, 2021 WL 5015496, at *6 (C.D. Cal. Oct. 26, 2021). Here, the Amended Complaint's conclusory allegations that Defendants collectively "knew the representations to be untrue or were reckless as to the truth of the representations" are insufficient to establish scienter, even under English law. FAC ¶ 70. This claim must be dismissed.

## III.    The Complaint Should Be Dismissed With Prejudice.

This Court should deny Plaintiff leave to amend because it would be futile. *See Bradley v. Peters*, 2020 WL 6381804, at *2 (S.D. Fla. Oc. 30, 2020). Plaintiff filed this litigation in the wrong forum entirely, a reality that cannot be cured by amendment. *See, e.g.*, *Divine Serenity Shop, Inc. v. Plant Identification Inc.*, 2025 WL 1370348, at *9 (M.D. Fla. May 12, 2025). The alleged fraud has nothing to do with forum selection, and Plaintiff has already conceded that the choice-of-law clause in the same provision is valid. Plaintiff should, therefore, be held to his repeated agreements to litigate in England.

## CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

Dated:  August 8, 2025                           Respectfully submitted,

_/s/ Marianna C. Chapleau_
Marianna C. Chapleau (Fla Bar No. 1059142)
Patrick Malone (Fla Bar No. 1051725)
Kirkland & Ellis LLP
Three Brickell City Centre,
98 S.E. 7th St., Suite 700
Miami, FL 33131
Tel: (305) 432-5600
Fax: (305) 432-5601
mchapleau@kirkland.com
patrick.malone@kirkland.com

Stefan Atkinson (_pro hac vice_)
Jordan D. Peterson (_pro hac vice_)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 909-3247
Fax: (212) 446-4900
stefan.atkinson@kirkland.com
jordan.peterson@kirkland.com

_Counsel for Defendants Iconic Sports Eagle
Investment LLC, James G. Dinan and
Alexander Knaster_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 8, 2025, the foregoing was filed with the Clerk of the Court

using the CM/ECF system, which will serve Notice of Filing on all counsel of record.

*/s/ Marianna Chapleau*
Marianna Chapleau