# EXHIBIT B

DocuSign Envelope ID: DB03A991-B45E-4D87-8380-99173EB6FAED

EXECUTION VERSION

Date: 9 December, 2022

**SHARE CHARGE**

**between**

**JOHN TEXTOR**

as Chargor

and

**ICONIC SPORTS EAGLE INVESTMENT LLC**

# KIRKLAND & ELLIS INTERNATIONAL LLP

30 St. Mary Axe
London EC3A 8AF
Tel:  +44 (0)20 7469 2000
Fax: +44 (0)20 7469 2001
www.kirkland.com

DocuSign Envelope ID: DB02A991-B45E-4D87-8380-99173EB6EAED

## Table of Contents

**Page**

| | | |
|---|---|---|
| 1 | Interpretation | 1 |
| 2 | Covenant to Pay | 4 |
| 3 | Charging Provisions | 4 |
| 4 | Protection of Security | 4 |
| 5 | Representations | 5 |
| 6 | The Chargors' Undertakings | 7 |
| 7 | Continuing Security | 8 |
| 8 | Enforcement of Security | 9 |
| 9 | Receivers | 11 |
| 10 | Application of Proceeds | 12 |
| 11 | Protection of Iconic and Receiver | 12 |
| 12 | Power of Attorney | 13 |
| 13 | Deferral of Chargor rights | 13 |
| 14 | Discharge Conditional | 14 |
| 15 | Covenant to Release | 14 |
| 16 | Ruling Off | 14 |
| 17 | Changes to Parties | 15 |
| 18 | Miscellaneous | 15 |
| 19 | Notices | 15 |
| 20 | Governing Law and Jurisdiction | 16 |
| | SCHEDULE 1 Shares | 18 |

**This Share Charge** is made as a deed on 9 DECEMBER 2022

**PARTIES**

(1)     **JOHN TEXTOR** of 100 Harbor Way, Hobe Sound, 33455, Florida, United States (the "**Chargor**"); and

(2)     **ICONIC SPORTS EAGLE INVESTMENT LLC** whose registered office is at Walkers Corporate Limited, 190 Elgin Avenue, George Town, Grand Cayman KY1-9008, Cayman Islands ( "**Iconic**").

It is agreed as follows:

**1      Interpretation**

1.1     Definitions

In this Share Charge:

"**Ares**" means Ares Capital Corporation.

"**Business Day**" means a day (other than a Saturday or a Sunday) on which banks are open for general business in London and New York;

"**Charged Property**" means the all the assets and undertakings from time to time mortgaged, charged or assigned to or subject to the security created or expressed to be created in favour of Iconic by or pursuant to this Share Charge, including (but not limited to) the Shares;

"**Company**" means Eagle Football Holdings Limited, a company incorporated in England and Wales with company number 14379286 and whose registered office is at 57-59 Beak Street, London, United Kingdom, W1F 9SJ.

"**GS Share Charge**" means the charge over shares between the Chargor, Goldman Sachs Bank USA and Goldman Sachs Bank Europe SE, as secured parties, dated 20 October 2022.

"**Declared Default**" means:

(a)     an Insolvency Proceeding has been commenced in respect of the Chargor on or after the date on which the Option is exercised pursuant to the Put Option Agreement;

(b)     an acceleration of any Permitted Liabilities prior to their stated final maturing on or after the date on which the Option is exercise pursuant to the Put Option Agreement;

(c)     Iconic has exercised its remedies under clause 4(d) of the Put Option Agreement and the Secured Obligations remain outstanding on the date falling six (6) months following the date of such exercise; or

(d)     failure of the Chargor to comply with the Chargor's obligations under Clause 4 of the Put Option Agreement.

"**Excluded Shares**" means the shares owned by the Chargor in the Company and subject to the Security created by the GS Shares Charge.

"**Insolvency Proceedings**" means the appointment of an administrator, liquidator, provisional liquidator, receiver, administrator, receiver or similar officer (including without limitation the

1

DocuSign Envelope ID: DB03A991-B45E-4D87-8380-99173EB6EAED

appointment of a similar officer with respect to a process for a natural person, including a trustee in bankruptcy) in respect of the Chargor or the winding, liquidation, provisional liquidation, dissolution, administration, reorganisation, composition, compromise, or arrangement (or similar process for a natural person) of or with the Chargor, or any equivalent or analogous appointment or proceedings under the law of any jurisdiction.

"**Option**" has the meaning given to that term in the Put Option Agreement;

"**Option Period**" has the meaning given to that term in the Put Option Agreement;

"**Permitted Disposal**" means a disposal by the Chargor of certain Shares in accordance with and pursuant to clause 13.7 of the SSHA.

"**Permitted Security**" has the meaning given to that term in Clause 8 (*Permitted Security)*;

"**Put Option Agreement**" means the put option agreement between the Chargor and Iconic dated 16 November 2022 (as amended and/or amended and restated from time to time);

"**Receiver**" means a receiver or receiver and manager or administrative receiver of the whole or any part of the Charged Property, as the context may require;

"**Related Rights**" means all dividends, distributions and other income paid or payable on a Share, together with all shares or other property derived from any Share and all other allotments, accretions, rights, benefits and advantages of all kinds accruing, offered or otherwise derived from or incidental to that Share (whether by way of conversion, redemption, bonus, preference, option or otherwise);

"**Secured Obligations**" means all obligations, payment or money due, owing or incurred or otherwise owed by the Chargor to Iconic following the exercise of the Option and up to an amount not exceeding (in aggregate) the Aggregate Option Price plus any interest accrued by the Chargor in favour of Iconic in accordance with the terms of the Put Option Agreement .

"**Security**" means any mortgage, charge (fixed or floating), pledge, lien or other security interest securing any obligation of any person and any other agreement entered into for the purpose and having the effect of conferring security or any arrangement having a similar effect;

"**Shares**" means:

(a)     until the Future Security Effective Date, all current and future shares owned by the Chargor in the Company, including but not limited to those specified in Schedule 1 (*Shares*) but excluding the Excluded Shares; and

(b)     on and from the Future Security Effective Date, all current and future shares owned by the Chargor in the Company, including but not limited to those specified in Schedule 1 (*Shares*).

"**SSHA**" means the subscription and shareholders' agreement dated 16 November 2022 between, amongst others, the Company and the Investors (as defined therein), as amended and/or amended and restated from time to time.

1.2     Construction

In this Share Charge, unless a contrary intention appears, a reference to:

(a)     an "agreement" includes any legally binding arrangement, concession, contract, deed or franchise (in each case whether oral or written);

(b)     an "amendment" includes any amendment, supplement, variation, novation, modification, replacement or restatement and "amend", "amending" and "amended" shall be construed accordingly;

(c)      "assets" includes present and future properties, revenues and rights of every description;

(d)     "including" means including without limitation and "includes" and "included" shall be construed accordingly;

(e)     "losses" includes losses, actions, damages, claims, proceedings, costs, demands, expenses (including fees) and liabilities and "loss" shall be construed accordingly;

(f)     "person" includes any individual, firm, company, corporation, government, state or agency of a state or any association, trust or partnership (whether or not having separate legal personality); and

(g)     "regulation" includes any regulation, rule, official directive, request or guideline (whether or not having the force of law) of any governmental, intergovernmental or supranational body, agency, department or regulatory, self-regulatory or other authority or organisation.

1.3     Other References and Interpretation

(a)     In this Share Charge, unless a contrary intention appears, a reference to:

(i)     Iconic or the Chargor or any other person is, where relevant, deemed to be a reference to or to include, as appropriate, that person's (and any subsequent) successors in title, permitted assignees and transferees;

(ii)    any agreement or instrument is to be construed as a reference to that agreement or instrument as amended, novated, varied, released, supplemented, extended, restated or replaced (in each case, however fundamentally);

(iii)   any clause or schedule is a reference to, respectively, a clause of and schedule to this Share Charge and any reference to this Share Charge includes its schedules;

(iv)    a provision of law is a reference to that provision as amended or re enacted.

(b)     The index to and the headings in this Share Charge are inserted for convenience only and are to be ignored in construing this Share Charge.

(c)     Words importing the plural shall include the singular and vice versa.

(d)     Unless otherwise defined in this Share Charge, words and expressions defined in the Put Option Agreement shall have the same meanings when used in this Share Charge.

(e)     Save for the Company and Ares, each of which shall be entitled to enforce and enjoy the benefit of the provisions of this Clause 9.1(b), a person who is not a party to this

3

DocuSign Envelope ID: DB03A991-B45E-4D87-8380-99173EB6EAED

Share Charge has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce or to enjoy the benefit of any term of this Share Charge.

(f)     Notwithstanding paragraph (e), any person who has provided (or intends to provide) Permitted Liabilities shall be able to rely on and enforce the provisions of Clause 8 (*Permitted Security*).

(g)     The obligations of the Chargor under this Share Charge shall be in addition to the covenants for title deemed to be included in this Share Charge by virtue of Part 1 of the Law of Property (Miscellaneous Provisions) Act 1994.

(h)     This Share Charge is intended to take effect as a deed notwithstanding that Iconic has executed it under hand only.

**2     Covenant to Pay**

2.1     Covenant to Pay

Subject to any limits on its liability specified below, the Chargor covenants, as primary obligor and not only as surety, with Iconic that it will pay and discharge the Secured Obligations on their due date in accordance with their respective terms (or if they do not specify a time for payment, promptly on prior written demand of Iconic).

**3     Charging Provisions**

3.1     Fixed Security

The Chargor, as continuing security for the payment of the Secured Obligations, charges in favour of Iconic by way of fixed charge and with full title guarantee all of the Shares and all corresponding Related Rights.

**4     Protection of Security**

4.1     Voting and Distribution Rights

(a)     Prior to the occurrence of a Declared Default:

(i)      the Chargor shall be entitled to receive and retain all dividends, distributions and other monies paid or payable on or derived from the Shares; and

(ii)     the Chargor shall be entitled to take all steps and exercise (or refrain from exercising) all rights, powers and discretion (including voting rights) attaching to the Shares and to deal with, receive, own and retain all assets and proceeds in relation thereto, subject to the terms of this Share Charge and the Put Option Agreement.

(b)     Iconic may, at its discretion, following the occurrence of a Declared Default, (in the name of the Chargor or otherwise and without any further consent or authority from the Chargor):

(i)      exercise (or refrain from exercising) any voting rights in respect of any Shares (unless Iconic has notified the Chargor in writing that it wishes to give up this right);

DocuSign Envelope ID: DB03A991-B45E-4D87-8380-99173EB6EAED

(ii)     apply all dividends, interest and other monies arising from any Shares in accordance with Clause 11 (*Application of Proceeds*);

(iii)    transfer any Shares into the name of such nominee(s) of Iconic as it shall require; and

(iv)    exercise (or refrain from exercising) the powers and rights conferred on or exercisable by the legal or beneficial owner of any Shares (unless Iconic has notified the Chargor in writing that it wishes to give up this right),

and the proceeds of any such action shall form part of the Charged Property.

(c)     Iconic shall not be entitled to exercise voting or any other rights or powers or take any action otherwise permitted under paragraph (b) above if and to the extent that, from time to time:

(i)     a notifiable acquisition would, as a consequence, take place under section 6 of the National Security and Investment Act 2021 (the "**NSIA**") and any regulations made under the NSIA; and

(ii)    either:

(A)     the Secretary of State has not approved that notifiable acquisition under and in accordance with the NSIA; or

(B)     the Secretary of State has so approved that notifiable acquisition but there would, as a consequence, be a breach of the provisions of a final order made in relation to it under the NSIA,

provided that, for the avoidance of doubt, this paragraph (c) is for the benefit of Iconic only and Iconic shall be entitled to exercise rights under paragraph (b) above without obtaining any approvals under the NSIA, if it determines that it is not necessary or advisable to obtain the same.

(d)     The Chargor will, on the date falling (5) Business Days after the date of this Share Charge, deposit with Kirkland & Ellis (International) LLP (to be held initially on behalf of Iconic and at all times in accordance with the terms of this Share Charge (or any Deed of Priority that overrides the provisions of this Share Charge)) all share certificates relating to the applicable Shares together with stock transfer forms executed in blank and left undated (the "**Title Documents**") **provided that**, on or around the date on which the Deed of Priority (as defined below) is entered into, the Title Documents shall be promptly delivered to the person specified in that Deed of Priority as holding those Title Documents (the "**Title Documents Holder**") and **provided further** that, save as agreed in the Deed of Priority, the Title Documents Holder shall be able to hold such certificates and stock transfer forms until the Secured Obligations have been paid in full and shall be entitled, at any time following the occurrence of a Declared Default, to complete, under its power of attorney given in this Share Charge, the stock transfer forms on behalf of the Chargor in favour of itself or such other person as it shall select.

5       **Representations**

The Chargor represents and warrants to Iconic that:

5.1     Binding obligations

DocuSign Envelope ID: DB03A991-B45E-4D87-8380-99173EB6EAED

The obligations expressed to be assumed by the Chargor hereunder constitute legal, valid, binding and enforceable obligations.

5.2     Non-conflict with other obligations

The entry into and performance by the Chargor of, and the transactions contemplated by this Share Pledge do not contravene any law or regulation applicable to it, the Company's constitutional documents or any agreement or instrument binding upon the Chargor or the Charged Property or constitute a default or termination event (however described) under any such agreement or instrument.

5.3     Power and authority

The Chargor has (or will have on the relevant date(s)) the power to enter into and perform, and has taken all necessary action to authorise its entry into and performance of this Share Charge and to carry out the transactions contemplated by this Share Charge.

5.4     Ranking

This Share Charge creates the Security which it purports to create over the Charged Property and those security interests are valid and effective and, subject to the terms of the Deed of Priority (as defined below), such Security has the ranking and priority it is expressed to have and is not liable to be avoided or otherwise set aside on any liquidation, administration or otherwise and it is not otherwise subject to any prior ranking or *pari passu* ranking Security.

5.5     Validity and admissibility in evidence

All material authorisations required by it in order:

(a)     to enable it to enter into, exercise its rights and comply with its material obligations under this Share Charge; and

(b)     to make this Share Charge admissible in evidence in the relevant jurisdiction,

have been obtained or effected (or will have been at the date required) and are (or will be) in full force and effect.

5.6     Governing law and enforcement

(a)     The choice of governing law of the Share Charge as expressed herein will be recognized in any relevant jurisdiction.

(b)     Any judgment obtained in relation to this Share Charge in the jurisdiction of the governing law hereof will be recognized and enforced in any such relevant jurisdiction.

5.7     No litigation

No litigation, arbitration, administrative proceedings of or before any court, arbitral body or agency which is reasonably likely to be materially adversely determined and which, if materially adversely determined would have a material adverse effect on the Chargor's ability to perform and discharge the Secured Obligations has been started or, to the best of the Chargor's knowledge is threatened, or is pending against it.

5.8     Security

6

DocuSign Envelope ID: DB93A90J-B4FE-4D87-8380-99173EB6EAEB

No Security exists over all or any part of the Charged Property other than pursuant to (i) this Share Charge.

5.9     Shares

(a)     It is the sole, absolute legal and beneficial owner of the Shares, free and clear from any security interest or other encumbrance other than pursuant to this Share Charge or any Permitted Security.

(b)     It has not disposed of any interest in, or granted any rights (whether of pre-emption or otherwise) over any of the Shares and their Related Rights nor agreed to do any of the same (other than pursuant to the Put Option Agreement).

(c)     The Shares and the Excluded Shares represent all of the shares in the Company legally and beneficially held by it.

(d)     The constitutional documents of the Company do not and could not restrict or inhibit any transfer of any of its Shares or creation or enforcement of the Security constituted by this Share Charge.

(e)     There are no agreements in force which provide for the issue or allotment of, or grant any person the right to call for the issue or allotment of, any share (including any option or right of pre-emption or conversion), other than pursuant to the Put Option Agreement.

5.10    Insolvency

No Insolvency Proceedings have commenced in any jurisdiction against the Chargor.

5.11     No Default

No other event or circumstance is outstanding which constitutes or may constitute a default under the Put Option Agreement or any other document, agreement, deed or arrangement to which the Chargor is party to or which is otherwise binding on the Chargor, or to which the Chargor's legal and beneficial interest in the Shares are subject.

5.12    Repetition

The representations and warranties in this Clause 5 will be deemed to be repeated on the Future Security Effective Date provided that that any reference to Shares and their Related Rights shall be to the Excluded Shares and their Related Rights only.

**6       The Chargors' Undertakings**

6.1     Time and manner of performance

(a)     Unless otherwise specified in this Share Charge, the Chargor shall perform its obligations hereunder promptly and at its own expense.

(b)     Notwithstanding any other provision of this Share Charge, the Chargor shall not be subject to any restriction which would not otherwise apply to the disposal of Charged Property imposed solely by reason of a moratorium being obtained, or anything being done with a view to a moratorium being obtained under Part A1 of the IA.

DocuSign Envelope ID: DB03A90J-B4FE-4D87-8380-99173ER6EAEB

6.2     Negative pledge

The Chargor undertakes that it will not create or agree to create or permit to subsist any Security on or over the whole or any part of the Charged Property (other than the Permitted Security) except in respect of which the prior consent of Iconic has been obtained.

6.3     No Security

The Chargor shall not take any Security in connection with its liabilities under this Share Charge from any guarantor of, or provider of Security for any of the Secured Obligations unless permitted hereunder.

6.4     Disposals

Except as expressly permitted herein, the Chargor shall not enter into or agree to enter into a single transaction or a series of transactions (whether related or not) and whether voluntary or involuntary in relation to any of the Charged Property (other than with respect to the Permitted Security) or any interest in it to:

(a)     sell, assign, lease, transfer or part with possession or occupation of it or enter into any agreement to do so;

(b)     create any legal or equitable estate or other interests in, or over, or otherwise relating to, all or any part of the Charged Property;

(c)     confer or permit to be conferred any licence, rights (whether of pre-emption or otherwise) or interest in respect of or over it;

(d)     do, or omit to do, any other act or thing which could be reasonably expected to adversely affect the ability of Iconic to exercise any of its rights; or

(e)     otherwise dispose of or surrender all or any part of it.

This Clause 6.4 shall not prohibit the Chargor from making any Permitted Disposal.

6.5     No amendments

The Chargor shall not amend the GS Share Charge without the prior written consent of Iconic.

**7       Continuing Security**

7.1     Continuing Security

This Security constituted by this Share Charge shall remain in full force and effect as a continuing security for the Secured Obligations notwithstanding any intermediate payment, discharge, satisfaction or settlement of all or any part of the Secured Obligations or any other act, matter or thing.

7.2     Other Security

This Security constituted by this Share Charge is to be cumulative, in addition to and independent of, and shall neither be merged into nor in any way exclude or prejudice or be affected by, any other Security or other right which Iconic may now or after the date of this Share Charge hold for any of the Secured Obligations and this Security may be enforced against the Chargor without first having recourse to any other rights of Iconic.

DocuSign Envelope ID: DB93A90J-B4FE-4D87-8380-99173EB6EAEB

**8      Permitted Security**

8.1     Notwithstanding the provisions of Clause 6 (*Chargor's Undertakings*) the Chargor may create additional Security over the Shares, provided that:

    (a)     the Security is created in favour of any third party to secure financial obligations not exceeding $35,000,000 in principal amount (when aggregated with the principal amount of all financial obligations secured against the Shares (other than the Secured Obligations) (the "**Permitted Liabilities**"); and

    (b)     the Permitted Liabilities are incurred for, and the proceeds of the Permitted Liabilities are used for, financing or refinancing any investment in the Company, its subsidiaries and/or the Crystal Palace Group (as defined in the Put Option Agreement) and related investments and expenses,

each such security being the **"Permitted Security"**.

8.2     On or prior to the creation of the Permitted Security, Iconic undertakes to, within ten (10) Business Days of request from the Chargor:

    (a)     enter into a deed of priority or similar arrangement (in each case, in a form reasonably satisfactory to Iconic) to be executed by the Chargor, Iconic, any holder of such Permitted Security and (if required by any incoming holder of Permitted Security) any third-party security agent or trustee (the "**Deed of Priority**"), providing, amongst other things:

        (i)     that such Permitted Security shall rank in priority to this Share Charge in all respects (including with respect to the proceeds of enforcement of this Share Security or any Permitted Security);

        (ii)     the holder of any Permitted Security shall have the right to enforce its Permitted Security in accordance with its terms provided that, if such enforcement involves the sale, appropriation or any other disposition whatsoever of the Shares, the holder of that Permitted Security shall agree to appoint Iconic as its agent to take any steps, action, transaction as is necessary or desirable to manage and implement that  process with a view to maximising recoveries of both the Permitted Liabilities and the Secured Obligations;

        (iii)     enforcement proceeds received from the enforcement of this Share Charge and any Permitted Security shall be applied:

            (A)     first, towards repayment of the Permitted Liabilities in full;

            (B)     second, towards repayment to Iconic of the Secured Obligations in full; and

            (C)     third, any surplus to the Chargor;

        (iv)     if at the time of a Default Trigger, the value of the Charged Property (to be determined in accordance with the terms of the Deed of Priority) is lower than or equal to the outstanding amount of the Permitted Liabilities, the holder of any Permitted Security shall be entitled to control the enforcement proceedings in respect of that Permitted Security and shall not be required to appoint Iconic as an agent in accordance with sub-paragraph (ii) above but shall apply any

9

enforcement proceedings in accordance with the waterfall in paragraph (ii) above.

    (b)    agree, upon written request from the Chargor, to make any amendment reasonably requested by the Chargor to the terms of this Share Charge to the extent necessary to give effect to the provisions set out in paragraph (a) above.

8.3    At the time the GS Share Charge is finally discharged or otherwise terminated, the Excluded Shares shall be immediately and automatically charged in favour of Iconic pursuant to Clause 3 (*Fixed Security*) and be subject to the terms of this Share Charge and the Deed of Priority (such date being the "**Future Security Effective Date**"). On the Future Security Effective Date, the Chargor shall deliver the Title Documents in respect of those Excluded Shares in accordance with the provisions of Clause 4(d) (*Protection of Security).*

## 9    Enforcement of Security

9.1    Enforcement Powers

    (a)    For the purpose of all rights and powers implied or granted by statute, the Secured Obligations are deemed to have fallen due on the date of this Share Charge (the "Relevant Date"). The power of sale and other powers conferred by section 101 of the Law of Property Act 1925 and all other enforcement powers conferred by this Share Charge shall arise on the Relevant Date and shall, subject to Clause 9.1(b) be immediately exercisable at any time after a Declared Default has occurred when Iconic may, without notice to the Chargor or prior authorisation from any court, in its absolute discretion, enforce all or any part of that Security (at the times, in the manner and on the terms it thinks fit) and take possession of and hold or dispose of all or any part of the Charged Property.

    (b)    If a Declared Default has occurred pursuant to paragraph (c) of the definition of "Declared Default", the enforcement of this Share Charge shall be subject to Ares' consent (not to be unreasonably withheld), to the extent the enforcement of the Share Charge would cause, trigger or accelerate: (i) a change of control; (ii) an event of default or (iii) a mandatory repayment or prepayment obligation, in each case in respect of 10% or more of the then outstanding financial indebtedness of Olympique Lyonnais (as defined in the SSHA) or its subsidiaries pursuant to the existing debt financing documentation of Olympique Lyonnais (as defined in the SSHA) or its subsidiaries.

9.2    Statutory Powers

The powers conferred on mortgagees, receivers or administrative receivers by the Law of Property Act 1925 and the Insolvency Act 1986 (as the case may be) shall apply to the Security created under this Share Charge, unless they are expressly or impliedly excluded. If there is ambiguity or conflict between the powers contained in those Acts and those contained in this Share Charge, those contained in this Share Charge shall prevail.

9.3    Exercise of Powers

All or any of the powers conferred upon mortgagees by the Law of Property Act 1925 as varied or extended by this Share Charge, and all or any of the rights and powers conferred by this Share Charge on a Receiver (whether expressly or impliedly), may be exercised by Iconic without further notice to the Chargor at any time after a Declared Default has occurred,

DocuSign Envelope ID: DB93A90J-B4FE-4D87-8380-99173FB6FAEB

irrespective of whether Iconic has taken possession or appointed a Receiver of the Charged Property.

9.4    Disapplication of Statutory Restrictions

The restriction on the consolidation of mortgages and on power of sale imposed by sections 93 and 103 respectively of the Law of Property Act 1925 shall not apply to the Security constituted by this Share Charge.

**10    Receivers**

10.1    Appointment of Receiver or Administrator

(a)    Subject to paragraph (c) below, at any time after a Declared Default has occurred, or if so requested by the Chargor, Iconic may by writing under hand signed by any officer or manager of Iconic, appoint:

(i)    any person (or persons) to be a Receiver of all or any part of the Charged Property;

(ii)    appoint two or more Receivers of separate parts of the Charged Property;

(iii)    remove (so far as it is lawfully able) any Receiver so appointed;

(iv)    appoint another person(s) as an additional or replacement Receiver(s); or

(v)    appoint one or more persons to be an administrator of the Chargor.

(b)    Section 109(1) of the Law of Property Act 1925 shall not apply to this Share Charge.

(c)    At any time after a Declared Default has occurred, Iconic shall be entitled to appoint a Receiver save to the extent prohibited by section 72A of the Insolvency Act 1986.

10.2    Powers of Receiver

Every Receiver shall (subject to any restrictions in the instrument appointing him but notwithstanding any winding-up or dissolution of the Chargor) have and be entitled to exercise, in relation to the Charged Property (and any assets of the Chargor which, when got in, would be Charged Property) in respect of which he was appointed, and as varied and extended by the provisions of this Share Charge (in the name of or on behalf of the Chargor or in his own name and at the cost of the Chargor):

(a)    all the powers conferred by the Law of Property Act 1925 on mortgagees in possession and on receivers appointed under that Act;

(b)    all the powers of an administrative receiver set out in Schedule 1 to the Insolvency Act 1986 (whether or not the Receiver is an administrative receiver);

(c)    all the powers and rights of an absolute owner and power to do or omit to do anything which the Chargor itself could do or omit to do; and

(d)    the power to do all things (including bringing or defending proceedings in the name or on behalf of the Chargor) which seem to the Receiver to be incidental or conducive to (i) any of the functions, powers, authorities or discretions conferred on or vested in him or (ii) the exercise of all rights, powers and remedies of Iconic under this Share Charge

11

DocuSign Envelope ID: DB93A901-B4FE-4D87-8380-99173EB6EAEB

(including realisation of all or any part of the Charged Property) or (iii) bringing to his hands any assets of the Chargor forming part of, or which when obtained would be, Charged Property.

10.3    Receiver as Agent

Each Receiver appointed under this Share Charge shall be the agent of the Chargor, which shall be solely responsible for his acts or defaults, and for his remuneration and expenses, and be liable on any agreements or engagements made or entered into by him.  Iconic will not be responsible for any misconduct, negligence or default of a Receiver.

10.4    Removal of Receiver

Iconic may by prior written notice remove from time to time any Receiver appointed by it (subject to the provisions of section 45 of the Insolvency Act 1986 in the case of an administrative receivership) and, whenever it may deem appropriate, appoint a new Receiver in the place of any Receiver whose appointment has terminated, for whatever reason.

10.5    Remuneration of Receiver

Iconic may from time to time fix the remuneration of any Receiver appointed by it.

10.6    Several Receivers

If at any time there is more than one Receiver, each Receiver may separately exercise all of the powers conferred by this Share Charge (unless the document appointing such Receiver states otherwise).

**11      Application of Proceeds**

11.1    Order of Application

All moneys received or recovered by Iconic or any Receiver pursuant to this Share Charge shall (subject to the claims of any person having prior rights thereto) be applied in satisfaction of the Secured Liabilities notwithstanding any purported appropriation by the Chargor.

11.2    Section 109 Law of Property Act 1925

Sections 109(6) and (8) of the Law of Property Act 1925 shall not apply to a Receiver appointed under this Share Charge.

11.3    Application against Secured Obligations

Subject to Clause 11.1 (*Order of Application*) above, any moneys or other value received or realised by Iconic from the Chargor or a Receiver under this Share Charge may be applied by Iconic to any item of account or liability or transaction forming part of the Secured Obligations to which they may be applicable in any order or manner which Iconic may determine.

**12      Protection of Iconic and Receiver**

12.1    No Liability

Neither Iconic nor any Receiver shall be liable in respect of any of the Charged Property or for any loss or damage which arises out of the exercise or the attempted or purported exercise of,

or the failure to exercise any of, their respective powers, unless caused by its or his fraud, gross negligence or wilful misconduct.

12.2    Possession of Charged Property

Without prejudice to Clause 12.1 (*No Liability*) above, if Iconic or the Receiver enters into possession of the Charged Property, it will not be liable to account as mortgagee in possession in respect of all or any part of the Charged Property or be liable for any loss upon realisation or for any neglect, default or omission in connection with the Charged Property to which a mortgagee or mortgagee in possession might otherwise be liable and may at any time at its discretion go out of such possession.

12.3    Delegation

Following a Declared Default, Iconic may delegate by power of attorney or in any other manner all or any of the powers, authorities and discretions which are for the time being exercisable by it under this Share Charge to any person or persons upon such terms and conditions (including the power to sub delegate) as it may reasonably and in good faith think fit and Iconic may, subject to the terms of the Finance Documents, pass confidential information to any such delegate.  Iconic will not be liable or responsible to the Chargor or any other person for any losses arising from any act, default, omission or misconduct on the part of any delegate.

12.4    Cumulative Powers

The powers which this Share Charge confers on Iconic and any Receiver appointed under this Share Charge are cumulative, without prejudice to their respective powers under the general law, and may be exercised as often as the relevant person thinks appropriate.  Iconic or the Receiver may, in connection with the exercise of their powers, join or concur with any person in any transaction, scheme or arrangement whatsoever.  The respective powers of Iconic and the Receiver will in no circumstances be suspended, waived or otherwise prejudiced by anything other than an express consent or amendment.

**13    Power of Attorney**

The Chargor, by way of security, on the date of this Share Charge, irrevocably and severally appoints Iconic, each Receiver and any person nominated for the purpose by Iconic or any Receiver as its attorney (with full power of substitution and delegation) in its name and on its behalf and as its act and deed at any time after the occurrence of a Declared Default to execute, seal and deliver (using the company seal where appropriate) and otherwise perfect and do any deed, assurance, agreement, instrument, act or thing which is expressly required to execute and do under the terms of this Share Charge, and which it has not done within a reasonable period of time or which may be required to enable the exercise of any rights or powers conferred on Iconic or any Receiver under this Share Charge or by law or otherwise for any of the purposes of this Share Charge, and the Chargor covenants with Iconic and each Receiver to ratify and confirm all such acts or things made, done or executed (or purported to be made, done or executed) by that attorney.

**14    Deferral of Chargor rights**

Until such time as the Secured Obligations have been discharged in full, the Chargor will not exercise any rights which it may have by reason of performance by it of its obligations under this Share Charge:

(a)    to be indemnified by any person;

13

(b)    to claim any contribution from any guarantor of any obligations under this Share Charge; and/or

to take the benefit (in whole or in part and whether by way of subrogation or otherwise) of any rights or of any other guarantee or Security taken pursuant to, or in connection with, this Share Charge by any party.

## 15    Discharge Conditional

If any settlement, discharge or release is made by Iconic in whole or in part on the basis of any payment, security or other disposition which is avoided or must be restored in insolvency, liquidation, administration or otherwise, without limitation, then the liability of the Chargor under this Share Charge will continue or be reinstated as if the settlement, discharge or release had not occurred and any Security the subject of the discharge will continue or be reinstated as if that settlement, discharge or release had not occurred.

## 16    Covenant to Release

Once all the Secured Obligations have been irrevocably paid in full and Iconic no longer has any actual or contingent liability to advance further monies to or incur any liability on behalf of the Chargor, Iconic shall, at the request and cost of the Chargor, promptly take any action including preparing and delivering all documents and instruments (including any termination or release letter or deed), revoking any powers of attorney and performing all acts or deeds (including returning title documents, share certificates, related stock transfer forms and any other document belonging to the Chargor) which are, in each case, necessary or otherwise requested by the Chargor (acting reasonably) to release or re-assign the Charged Property from the Security constituted by this Share Charge.

16.1   Where the Chargor is making a Permitted Disposal, Iconic shall, at the request of the Chargor, promptly take any action including preparing and delivering all documents and instruments (including any partial termination or partial release letter or deed), revoking any powers of attorney and performing all acts or deeds (including returning title documents, share certificates, related stock transfer forms and any other document belonging to the Chargor) which are, in each case, necessary or otherwise requested by the Chargor (acting reasonably) to release or re-assign the Shares the subject of the Permitted Disposal (in each case at the Chargor's sole cost and expense).

## 17    Further Assurance

The Chargor shall promptly, at its own expense, enter into, execute and do all such acts or execute all such documents (including assignments, transfers, mortgages, charges, notarisations, the payment of any stamp duties or fees, serving notices, making filings, registrations and applications for relief against forfeiture) as may be necessary or advisable for the purpose of all or any of the following:

(a)    giving effect to the requirements of this Share Charge;

(b)    creating, protecting, preserving and perfecting the Security intended to be constituted under this Share Charge and the ranking of that Security or for the exercise of the Related Rights;

(c)    enabling any of the Charged Property to be transferred into the name of a purchase on enforcement of the Security constituted under this Share Charge; and

(d)  facilitating the realisation of all or any of the Charged Property or the exercise of any rights, powers and discretions conferred on Iconic or any administrator.

## 18   Ruling Off

If Iconic receives notice or is deemed to have received notice of any subsequent Security or other interest affecting all or any part of the Charged Property or any assignment or transfer of the Charged Property it may open a new account for the Chargor in its books.  If it does not do so then (unless it gives express notice in writing to the contrary to the Chargor), as from the time it receives that notice, all payments made by or on behalf of the Chargor to it (in the absence of any express appropriation to the contrary) shall be treated as having been credited to a new account of the Chargor and not as having been applied in reduction of the Secured Obligations as at the time the relevant notice was received or deemed to have been received.

## 19   Changes to Parties

19.1   Assignment

Iconic may not assign or otherwise transfer all or any part of its rights and obligations under this Share Charge without the prior written consent of the Chargor. None of the rights and obligations of the Chargor under this Share Charge shall be capable of being assigned or transferred without the prior written consent of Iconic.

## 20   Miscellaneous

20.1   Certificates Conclusive

A certificate or determination of Iconic as to any amount payable under this Share Charge will be conclusive and binding on the Chargor, except in the case of manifest error.

20.2   Counterparts

This Share Charge may be executed in any number of counterparts, and this has the same effect as if the signatures on the counterparts were on a single copy of this Share Charge.

20.3   Invalidity of any Provision

If any provision of this Share Charge is or becomes invalid, illegal or unenforceable in any respect under any law, the validity, legality and enforceability of the remaining provisions shall not be affected or impaired in any way.

20.4   Failure to Execute

Failure by one or more parties ("**Non Signatories**") to execute this Share Charge on the date hereof will not invalidate the provisions of this Share Charge as between the other parties who do execute this Share Charge.  Such Non Signatories may execute this Share Charge on a subsequent date and will thereupon become bound by its provisions.

## 21   Notices

21.1   Communications in Writing

Any communication to be made under or in connection with this  Share Charge shall be made in writing and, unless otherwise stated, may be made by electronic mail or letter.

21.2    Addresses

The address (and the department or officer, if any, for whose attention the communication is to be made) of each party to this Share Charge for any communication or document to be made or delivered under or in connection with this Share Charge is:

(a)    in the case of any person which is a party on the date of this Share Charge, that identified with its signature below; and

(b)    in the case of each other party, that notified in writing to Iconic on or prior to the date on which it becomes a party,

or any substitute address, electronic mail address or department or officer which that party may notify to Iconic (or Iconic may notify to the other parties, if a change is made by Iconic) by not less than five (5) Business Days' notice.

21.3    Delivery

(a)    Any communication or document made or delivered by one person to another under or in connection with this Share Charge will only be effective:

(i)    if by way of electronic mail, when received in legible form; or

(ii)    if by way of letter, when it has been left at the relevant address or five Business Days after being deposited in the post, postage prepaid, in an envelope addressed to it at that address,

and, if a particular department or officer is specified as part of its address details provided under Clause 17.2 (*Addresses*), if addressed to that department or officer.

(b)    Any communication or document to be made or delivered to Iconic will be effective only when actually received by it and then only if it is expressly marked for the attention of the department or officer identified in Clause 17.221.2 (*Addresses*) (or any substitute department or officer as Iconic shall specify for this purpose).]

**22    Governing Law and Jurisdiction**

22.1    Governing Law

This Share Charge and any non-contractual obligations arising out of or in connection with it are governed by English law.

22.2    Jurisdiction

The courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with this Share Charge (including a dispute relating to the existence, validity or termination of this Share Charge or the consequences of its nullity or any non-contractual obligation arising out of or in connection with this Share Charge (a "**Dispute**")).

22.3    Convenient Forum

The parties agree that the courts of England are the most appropriate and convenient courts to settle Disputes between them and, accordingly, that they will not argue to the contrary.

22.4    Exclusive Jurisdiction

This Clause 22 (*Addresses*

*The address (*and the department or officer, if any, for whose attention the communication is to be made) of each party to this Share Charge for any communication or document to be made or delivered under or in connection with this Share Charge is:

(c)     in the case of any person which is a party on the date of this Share Charge, that identified with its signature below; and

(d)     in the case of each other party, that notified in writing to Iconic on or prior to the date on which it becomes a party,

or any substitute address, electronic mail address or department or officer which that party may notify to Iconic (or Iconic may notify to the other parties, if a change is made by Iconic) by not less than five (5) Business Days' notice.

22.5    Delivery

(a)     Any communication or document made or delivered by one person to another under or in connection with this Share Charge will only be effective:

(i)     if by way of electronic mail, when received in legible form; or

(ii)    if by way of letter, when it has been left at the relevant address or five Business Days after being deposited in the post, postage prepaid, in an envelope addressed to it at that address,

and, if a particular department or officer is specified as part of its address details provided under Clause 17.2 (*Addresses*), if addressed to that department or officer.

(b)     Any communication or document to be made or delivered to Iconic will be effective only when actually received by it and then only if it is expressly marked for the attention of the department or officer identified in Clause 17.221.2 (*Addresses*) (or any substitute department or officer as Iconic shall specify for this purpose).]

Governing Law and Jurisdiction) is for the benefit of Iconic only.  As a result and notwithstanding Clause 22.2 (*Jurisdiction*) and Clause 22.3 (*Convenient Forum*), it does not prevent Iconic from taking proceedings relating to a Dispute in any other courts with jurisdiction. To the extent allowed by law, Iconic may take concurrent proceedings in any number of jurisdictions.

In witness whereof this Share Charge has been duly executed as a deed on the date first above written.

DocuSign Envelope ID: DB03A90J-B4FE-4D87-8380-99173EB6EAEB

## SCHEDULE 1
### Shares

| Name of company issuing shares | Number and class |
| --- | --- |
| Eagle Football Holdings Limited | 31240 Ordinary Shares |

**Signatories to Share Charge**

The Chargor

**EXECUTED** as a **DEED** by                    )
**JOHN TEXTOR**                                   )
                                                  )

DocuSigned by:

*John Textor*

F2AC3D9FD449453...
_____

John Textor

DocuSigned by:

*Jami Textor*

E51D945882D14F3...
_____

Witness

Name: Jami Textor
Address: 318 South US Highway One, Jupiter FL
Occupation: Accountant


Notice Details

Email: john.textor@facebank.com
Address: 100 Harbor Way, Hobe Sound, 33455, Florida, United States
Occupation:

*[Project Roar - share pledge agreement - signature page]*

**Iconic**

SIGNED by                                     )
**ICONIC SPORTS EAGLE INVESTMENT LLC**
acting by:                                    )

Name: James G. Dinan
Title: Manager

Notice Details

Email:        Jdinan@yorkcapital.com
Address:      520 Island Drive Palm Beach, FL 33480
Occupation:   Manager

With a copy to:

Brian Traficante
York Capital Management
1330 Avenue of the Americas
New York, NY 10019
Btraficante@yorkcapital.com

*[Project Roar - share pledge agreement - signature page]*