# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 2:25-cv-14239

JOHN TEXTOR,

      Plaintiff,

vs.

ICONIC SPORTS EAGLE INVESTMENT
LLC, JAMES G. DINAN, and ALEXANDER
KNASTER,

      Defendants.

**DEFENDANTS' REPLY MOTION TO DISMISS THE AMENDED COMPLAINT
PURSUANT TO FORUM NON CONVENIENS AND FED. R. CIV. P. 12(B)(6)**

## TABLE OF CONTENTS

Introduction ............................................................................................................... 1

Argument .................................................................................................................. 2

I.       The Mandatory Forum-Selection Clauses Compel Dismissal Of The
         Amended Complaint With Prejudice. ........................................................... 2

II.      The Amended Complaint Fails To State A Claim. ......................................... 3

         A.       Plaintiff Cannot Escape Heightened Pleading Standards By
                  Recharacterizing His Fraud Claims As Pure Omissions. ...................... 3

         B.       Plaintiff Ignores The PSLRA Safe Harbor And Other Reasons The
                  Statements Are Not Actionable. ........................................................ 6

         C.       Plaintiff Has No Substantive Response To His Inability To Establish
                  Scienter. ......................................................................................... 9

         D.       Plaintiff Does Not Deny That The Information Was Publicly Available. ............ 10

         CONCLUSION .............................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Callen v. Daimler AG*,
    No. 1:19-CV-1411-TWT, 2020 WL 10090879 (N.D. Ga. June 17, 2020)...............................4

*Carvelli v. Ocwen Fin. Corp.*,
    934 F.3d 1307 (11th Cir. 2019) ..................................................................................................7

*City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*,
    649 F. Supp. 3d 1256 (S.D. Fla. 2023) ......................................................................................9

*Hartel v. GEO Grp., Inc.*,
    No. 20-81063-CIV, 2021 WL 4397841 (S.D. Fla. Sept. 23, 2021)...........................................7

*MacPhee v. MiMedx Grp., Inc.*,
    73 F.4th 1220 (11th Cir. 2023) ................................................................................................10

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024)............................................................................................................1, 4, 5

*McClure v. Toyota Motor Corp.*,
    759 F. Supp. 3d 1333 (N.D. Ga. 2024) .....................................................................................4

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) .................................................................................................6

*Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*,
    645 F.3d 1307 (11th Cir. 2011) .................................................................................................2

*In re Smith Gardner Sec. Litig.*,
    214 F. Supp. 2d 1291 (S.D. Fla. 2002) ...................................................................................10

*In re Tech. Chemicals Sec. Litig.*,
    No. 98-7334, 2000 WL 1222025 (S.D. Fla. July 3, 2000).........................................................9

*Wilchombe v. TeeVee Toons, Inc.*,
    555 F.3d 949 (11th Cir. 2009) ............................................................................................3, 10

**Statutes**

Private Securities Litigation Reform Act (PSLRA).........................................................................7

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................................3, 4, 6

ii

Section 10(b) of the Securities Exchange Act (15 U.S.C. § 78j)................................................2, 5

17 CFR 240.10b-5..........................................................................................................1, 4, 5, 7

## INTRODUCTION

Plaintiff agrees that this Court's "prior views regarding the proper forum for Plaintiff's claims" require dismissal of the Amended Complaint with prejudice. Pl.'s Opp. to Defs.' Mot. to Dismiss ("Opp.") at 1. Plaintiff offers no new analysis of the mandatory forum-selection clauses at issue, so there is no reason for the Court to change its "prior views." If anything, since this Court issued the TRO Order, Plaintiff has only further validated the forum-selection clauses by admitting in the English court that "the Put Option was, and is, valid and enforceable" and is "subject to the exclusive jurisdiction of the English Court." (Ex. A, Defence dated August 20, 2025, ¶¶ 10, 25; Ex. B, Particulars of Claim dated July 3, 2025, ¶ 12). In short, if there was any doubt before, Plaintiff has now made clear that this Court should dismiss his Amended Complaint with prejudice for forum non conveniens.

Nor does Plaintiff dispute that he failed to plead his claims with particularity. Instead, Plaintiff argues that the heightened pleading standards for fraud do not apply to his claims because they are "premised on a material omission," which cannot be stated with particularity. Opp. at 2. Plaintiff, however, fails to cite the controlling Supreme Court decision that flatly rejects his argument, holding that, "[l]ogically and by its plain text, [Rule 10b–5] *requires identifying affirmative assertions* (*i.e.*, 'statements made')" to determine whether the omitted information should have been disclosed. *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260, 264 (2024) (emphasis added). Because the Amended Complaint comes nowhere close to alleging the "who, what, when, where, and how" of the allegedly misleading statements made by Defendants, the Amended Complaint should be dismissed on this independent basis.

Otherwise, Plaintiff has no real response to his failure to plead the elements of fraud. Plaintiff ignores the fundamental principle of securities law that statements must be false or misleading *when made* and Defendants must believe that they are false *at that time*. Indeed, courts

universally reject fraud by hindsight, and the PSLRA specifically protects forward-looking statements made with cautionary language. Like all insurers, Plaintiff wishes he had known when he signed the Put Option Agreement that Defendants would eventually have to use their self-described "insurance policy." But that does not mean that Plaintiff has stated a claim for fraud.

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

## ARGUMENT

I. **The Mandatory Forum-Selection Clauses Compel Dismissal Of The Amended Complaint With Prejudice.**

There is no reason for the Court to revisit its previous analysis that the applicable forum-selection clauses require Plaintiff to bring his claims in England, which Plaintiff admits "is dispositive of Defendants' motion to dismiss." Opp. at 1. Plaintiff never moved to reconsider that ruling and provides no basis for the Court otherwise to revisit "its prior views regarding the proper forum for Plaintiff's claims." *Id.* Nevertheless, Plaintiff rehashes his own prior argument, again asserting that "the *Bremen* test, formulated in a non-securities case, should not apply to Plaintiff's federal securities claim" because "*Morrison* . . . provides a bright-line test for determining when U.S. securities law apply [sic]," which Plaintiff argues is applicable here. Opp. at 10–11. Plaintiff's argument not only ignores controlling post-*Morrison* law but also disregards this Court's own analysis, "applying the *Bremen* test and its progeny" to this case and concluding that "Plaintiff has not met his strong burden to show that enforcement of the forum selection clauses would be unreasonable under the circumstances."[1] TRO at 10–13.

---

[1] Plaintiff cites *Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310 (11th Cir. 2011) for the proposition that *Morrison* provides a bright-line rule governing whether U.S. securities law applies. Again, Plaintiff misreads the applicability of that decision here. Like *Morrison*, *Quail Cruises* addressed the substantive reach of § 10(b), not the enforceability of contractual forum-selection clauses, where, as here, the parties expressly agreed to litigate disputes exclusively in England.

In a last-ditch effort to invoke *Morrison*, Plaintiff introduces new allegations that he did not plead in the Amended Complaint.  Despite that two of the three defendants and Eagle itself are foreign parties, Plaintiff tries to characterize the Eagle transaction as "occur[ring] within the United States" by alleging for the first time that "the Fraudulently Obtained Agreements were executed **within** the United States."  Opp. at 11–12.  Plaintiff does not cite to the Amended Complaint for this argument because no such allegation exists there.  The Amended Complaint vaguely alleges that "the sale of the security that is the subject of this action was consummated in this District" and that "the negotiation of the Put Option Agreement" occurred "while **Textor** was physically present in the Southern District of Florida."  FAC ¶¶ 8, 11 (emphasis added).  But the Amended Complaint is silent as to where the three relevant agreements were "executed" or where **Defendants** were when they executed the agreements or made the alleged fraudulent statements.  Plaintiff cannot now rely on such allegations to defeat a motion to dismiss.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (affirming that the district court "properly refused" to consider newly raised allegations because "[a] court's review on a motion to dismiss is 'limited to the four corners of the complaint'").

However, even if the Court considers these allegations (and it should not), they do not alter the Court's thorough analysis under *Bremen* and the conclusion that the forum-selection clauses should be enforced.  Accordingly, for the same reasons that this Court denied Plaintiff's request for injunctive relief, the Amended Complaint should be dismissed with prejudice.[2]

## II.     The Amended Complaint Fails To State A Claim.

### A.     Plaintiff Cannot Escape Heightened Pleading Standards By Recharacterizing His Fraud Claims As Pure Omissions.

---

[2]     Plaintiff concedes that the Amended Complaint should be dismissed **with prejudice** if dismissed on this basis. *See* Opp. at 20 n.6.

3

Plaintiff does not dispute that the affirmative statements described in the Amended Complaint fail to meet the heightened pleading standards of Rule 9(b) and the PSLRA. *See* Defs.' Mot. to Dismiss ("Mot.") at 12–13. Instead, Plaintiff attempts to bypass these pleading requirements by recasting his fraud claims as pure omissions. Plaintiff's arguments are not supported by the law, and he otherwise makes no attempt to defend his pleading defects. Therefore, the Amended Complaint must be dismissed for failure to state a claim.[3]

Plaintiff mistakenly argues that the Amended Complaint's pleading deficiencies do not warrant dismissal because "Rule 9(b)[] . . . . functions differently in the context of omission-based fraud claims." Opp. at 14 (quotation omitted). Tellingly, Plaintiff does not cite any federal securities cases for this proposition and instead relies solely on two cases applying state law to products liability claims. *See id.* (citing *McClure v. Toyota Motor Corp.*, 759 F. Supp. 3d 1333, 1354 (N.D. Ga. 2024) (applying Georgia law to fraud claims alleging that Toyota concealed a design defect); *Callen v. Daimler AG*, No. 1:19-CV-1411-TWT, 2020 WL 10090879, at *14 (N.D. Ga. June 17, 2020) (addressing "fraud claims under the laws of North Carolina, Pennsylvania, Ohio, and Virginia" based on allegations that defendant car manufacturer failed to disclose a design defect)). In these inapposite cases, however, the courts had found that the manufacturer defendants ***did*** have an affirmative duty to disclose the existence of defects when selling their cars; therefore, the courts reasoned that the plaintiffs did not have to allege the "who, what, where, when, and how" of the defect not being disclosed. *See McClure*, 759 F. Supp. 3d at 1358 (finding

---

[3] Plaintiff does not make any separate arguments for his Florida or English Law claims, concluding instead, "if Plaintiff has stated a federal securities fraud claim, by definition he has also stated a Florida securities fraud claim and an English fraud claim." Opp. at 20. Because Plaintiff has failed to state a federal securities fraud claim, his entire Amended Complaint should be dismissed, including his state and English law claims. *See* Mot. at 19–20.

"Plaintiff has plausibly alleged Defendants' duty to disclose the existence of the Defect" under state law); *Callen*, 2020 WL 10090879, at *18 (same).

In contrast, the Supreme Court has held that federal securities laws "***do not*** create an affirmative duty to disclose any and all material information," and "[e]ven a duty to disclose [ ] does not automatically render silence misleading under Rule 10b–5(b)." *Macquarie*, 601 U.S. at 264–65 (quotation omitted; emphasis added). Rather, the Court held in the seminal case, *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, that "the failure to disclose information . . . can support a Rule 10b–5(b) claim ***only if*** the omission renders affirmative statements made misleading." *Id.* at 265 (emphasis added). In other words, there ***is*** a "who, what, when, where, and how" related to a securities fraud defendant's omission of material information, *i.e.*, the affirmative statements the defendant made that became misleading because of that omission.

For example, in *Macquarie*, the plaintiff predicated its Rule 10b–5 claim on the allegation that the defendant company—which was in the business of storing fuel—failed to disclose in its public offering documents that a new United Nations regulation banned a certain type of fuel that defendant stored, thus affecting storage capacity. *Id.* at 261. Examining the plain text of Rule 10b–5, the Supreme Court held that it prohibited "two things": (1) making "'any untrue statement of a material fact'—*i.e.*, false statements or lies" and (2) "omitting a material fact necessary 'to make the statements made . . . not misleading.'" *Id.* at 263. Accordingly, the Court held that Rule 10b–5 "***requires*** identifying affirmative assertions (*i.e.*, 'statements made') before determining if other facts are needed to make those statements not misleading." *Id.* at 264 (quotations omitted; emphasis added). Because the *Macquarie* plaintiff had only alleged that the United Nations regulation should have been disclosed in the public offering documents generally, the Court concluded that it had not sufficiently alleged fraud. *Id.* at 265 (explaining that allowing a Rule

10b–5 claim without plaintiff identifying specific misleading statements would "shift[] the focus of that Rule and § 10(b) from fraud to disclosure").

In so holding, the Court flatly rejected the argument that "a plaintiff does not need to plead any statements rendered misleading by a pure omission." *Id*.  As a result, none of Plaintiff's attempts to defend his pure omissions claims can stand.  *See, e.g.*, Opp. at 2 ("[A] material omission does not require a plaintiff to plead all of the infinite times, places, and manners in which a material fact was not communicated."); 15 ("At 'no point' is as specific as any Plaintiff can be with respect to a material omission.").  Rule 9(b) requires Plaintiff "to plead the who, what, when, where, and how of the allegedly false statements," and the PSLRA further "requires a complaint to specify . . . the reason or reasons why the statement is misleading" and "allege facts supporting a strong inference of scienter for each defendant with respect to each violation."  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237–38 (11th Cir. 2008) (quotations omitted).  The Amended Complaint fails to state a fraud claim because it fails to allege these facts for each identified statement.

## B.    Plaintiff Ignores The PSLRA Safe Harbor And Other Reasons The Statements Are Not Actionable.

Plaintiff fails to address Defendants' arguments that each of the alleged statements was immaterial or inactionable.  Instead, he states generally that "Defendants' lies and omissions surrounding [their purported inability to obtain financing]" were more than "mere 'puffery,'" because "Defendants knew or recklessly disregarded facts contradicting those statements."  Opp. at 16–17.  Plaintiff's conclusory defense fails, however, because Plaintiff does not consider the specific circumstances (and accompanying arguments) of each individual statement.

### *"Highly Unlikely" De-SPAC Transaction Would Not Occur.*

- "Prior to November 16, 2022, Defendants represented to Textor that … [it was] highly unlikely, that (a) ISEI would decline to exercise the De-SPAC Option, or (b) that the De-SPAC Transaction would not occur. … This representation was made to Textor by ISEI through Defendant Dinan, and by Defendant Knaster …."  FAC ¶ 25.

6

Plaintiff does not address the forward-looking nature of this statement or the speculative nature of its alleged falsity.  As explained in the Motion, this statement is not only immaterial because it is a vague, optimistic comment—but it is also inactionable because it is "a prediction, projection, or plan" of what is likely to happen in the future, which is excluded from liability under Rule 10b–5.  *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1324 (11th Cir. 2019); *see* Mot. at 14–15.  Plaintiff admits that Defendants expressly cautioned that the De-SPAC Transaction was ***not*** guaranteed when "Defendants represented to Textor that the Put Option Agreement was an 'insurance policy' for them against the possibilit[y] . . . that the De-SPAC Transaction would not occur."  FAC ¶ 25.  This cautionary language explicitly recognizing the future possibility that the De-SPAC Transaction would not occur is more than sufficient to bring Defendants' allegedly false statement within the PSLRA's safe harbor.  *Carvelli*, 934 F.3d at 1326-27.

Plaintiff, however, ignores this analysis and relies on *Hartel v. GEO Grp., Inc.*, No. 20-81063-CIV, 2021 WL 4397841, at *10 (S.D. Fla. Sept. 23, 2021), for the point that "statements about the Company's access to future capital 'are more than mere puffery . . . .'"  Opp. at 16.  Plaintiff overlooks, however, that *Hartel* itself concluded that the same statement—that the company "expect[ed] to continue to have access to cost effective capital"—while not considered puffery, ***was*** "a forward-looking statement that is not actionable under the safe harbor provision" of the PSLRA.  2021 WL 439784, at *9.  The court explained that, even though plaintiffs alleged that, "once JPMorgan and Wells Fargo stopped financing [the company,] other big banks were likely to follow suit," this "argument that other banks would likely follow suit is mere speculation."  *Id.*  Likewise, here, Plaintiff's argument that no bank would provide PIPE financing to ISEI because of some investors' publicly known Russian ties is mere speculation.  For this reason, Plaintiff's securities fraud claim based on this statement must fail.

### *Textor Had The "Most Control" Over Whether De-SPAC Transaction Would Occur*.

- "ISEI stated, upon making its investment in Eagle, that as the CEO of Eagle, Textor was the single person with the most control over whether the De-SPAC Transaction would occur." FAC ¶ 26.

Plaintiff fails to address Defendants' arguments that this statement was true when made or at the very least an inactionable opinion. *See* Mot. at 15–16. Even Plaintiff's own argument— that "Defendants knew or recklessly disregarded facts contradicting" this statement, Opp. at 17— does not explain how alleged knowledge of some investors' Russian ties **contradicts** the statement that a CEO and majority shareholder is "the single person" with the most control over the company's business. Because the Amended Complaint does not sufficiently allege that this statement was false when made, Plaintiff's claims based on this statement must be dismissed. *See In re Tech. Chemicals Sec. Litig.*, No. 98-7334, 2000 WL 1222025, at *8 (S.D. Fla. July 3, 2000) ("Without adequately alleging that the Defendants' representations were false, it is impossible to say that the Defendants were severely reckless in making the statements.").

### ***Defendants Were Having No Difficulties Conducting Business***.

- At some unspecified point in time, "Defendants falsely represented to Textor that they were having no difficulties conducting business with respected financial institutions and no trouble obtaining financing," and "ISEI, through its agents … den[ied] that either market conditions or Knaster's ties with sanctioned Russian individuals posed an issue for obtaining financing." FAC ¶¶ 38, 44.

Plaintiff does not respond to the argument that this statement, without a specified time period, cannot be false. *See* Mot. at 17. Plaintiff's claim is that Defendants made certain statements "in order to induce Plaintiff to agree to the Fraudulently Obtained Agreements." Opp. at 17; FAC ¶¶ 51-54. Necessarily then, this statement must have been made **before** Plaintiff entered the agreements. However, the Amended Complaint does not allege anywhere that Defendants tried and were having "trouble" obtaining financing before Plaintiff entered the agreements, which logically makes sense because Defendants would have no reason to obtain financing before they entered the Eagle transaction. Plaintiff, therefore, has again failed to satisfy

his burden "to plead specific facts supporting [his] allegation that [this] statement was *false or misleading when made*." *In re Tech. Chemicals Sec. Litig.*, 2000 WL 1222025, at *7 (emphasis in original). As such, Plaintiff's claims based on this statement must be dismissed.

### C.    Plaintiff Has No Substantive Response To His Inability To Establish Scienter.

To support the claim that Defendants "induce[d] Textor to agree to the Put Option Agreement by making him believe the SPAC was viable," Plaintiff argues that Defendants "knew that ISAC's ties to sanctioned Russians would make the De-SPAC Transaction impossible" for two reasons. Opp. at 17–18. Both arguments fail.

*First*, Plaintiff argues that Defendants knew the De-SPAC Transaction was impossible "because they were in fact failing to get financing for the De-SPAC Transaction." *Id.* at 18. But, again, the Amended Complaint does not allege that Defendants tried and failed to get financing *before* Plaintiff signed the Put Option Agreement. *See* FAC ¶¶ 43–46. And any knowledge Defendants allegedly had *after* Plaintiff signed the Agreement is irrelevant for scienter purposes. *See City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*, 649 F. Supp. 3d 1256, 1273 (S.D. Fla. 2023) ("[T]he classic fraud by hindsight [theory] where a plaintiff alleges that the fact that something turned out badly must mean defendant knew earlier that it would turn out badly . . . should not and cannot support scienter." (citation omitted)).

*Second*, Plaintiff now argues that Defendants Dinan and Knaster knew "financial institutions would be unwilling to comingle their money with that of sanctioned Russian individuals" because such knowledge "would be *obvious*" to them as "sophisticated financiers." Opp. at 18 (emphasis added) (citing FAC ¶¶ 5, 8). The Amended Complaint, however, does not allege that these two specific defendants would have this specific knowledge because they were "sophisticated financiers"; the paragraphs of the Amended Complaint cited by Plaintiff only note

Dinan's and Knaster's roles at their respective companies.  Plaintiff further argues that Defendants had the requisite knowledge because "Dinan negotiated and signed the Put Option Agreement on behalf of ISEI, and Knaster was involved in that negotiation as well. The senior leaders of ISEI were the ones committing the fraud."  Opp. at 18.  Plaintiff does not cite the Amended Complaint for this argument because, again, it does not contain any of these allegations.  Because these allegations are not within the four corners of the Amended Complaint, they are improper here.  *See Wilchombe*, 555 F.3d at 959.  Regardless, they are insufficient to establish scienter.  *See In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291, 1303 (S.D. Fla. 2002) ("Mere allegations that Defendants held senior management positions, had access to inside information, and therefore must have known of the falsity of certain statements is insufficient to plead scienter.").

### D.    Plaintiff Does Not Deny That The Information Was Publicly Available.

Because Plaintiff cannot deny that information about the Russian ties was publicly available, he instead pivots, focusing his claim—no longer on Defendants' alleged failure to disclose the Russian ties—but rather on the allegation that "those ties . . . were causing Knaster and Eisler problems."  Opp. at 19.  But, again, the Amended Complaint does not allege that Defendants had "problems" or "difficulties" in "obtaining financing for the SPAC" *before* Plaintiff signed the Put Option Agreement.  *Id.* (citing FAC ¶ 41).  Moreover, Plaintiff fails to account for the fact that he himself was a "sophisticated financier," like Defendants Dinan and Knaster.  *See* FAC ¶ 3; Defs.' TRO Opp. at 3.  Therefore, by his own logic, it should have been "obvious" to *him* that the Russian ties would allegedly cause difficulties in obtaining financing (Opp. at 18), and any information that was "obvious" to Plaintiff when he signed the Put Option Agreement cannot support a theory of loss causation.  *MacPhee v. MiMedx Grp., Inc*., 73 F.4th 1220, 1246 (11th Cir. 2023) (holding no loss causation based on "information already known").

**<u>CONCLUSION</u>**

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

Dated:  August 29, 2025

Respectfully submitted,

<u>*Marianna C. Chapleau*</u>
Marianna C. Chapleau (Fla Bar No. 1059142)
Patrick Malone (Fla Bar No. 1051725)
Kirkland & Ellis LLP
Three Brickell City Centre,
98 S.E. 7th St., Suite 700
Miami, FL 33131
Tel: (305) 432-5600
Fax: (305) 432-5601
mchapleau@kirkland.com
patrick.malone@kirkland.com

Stefan Atkinson (*pro hac vice*)
Jordan D. Peterson (*pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 909-3247
Fax: (212) 446-4900
stefan.atkinson@kirkland.com
jordan.peterson@kirkland.com

*Counsel for Defendants Iconic Sports Eagle Investment LLC, James G. Dinan and Alexander Knaster*

11

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 29, 2025, the foregoing was filed with the Clerk of the Court

using the CM/ECF system, which will serve Notice of Filing on all counsel of record.

<u>*/s/ Marianna Chapleau*                         </u>
Marianna Chapleau