<u>**IN THE HIGH COURT OF JUSTICE**</u>          **Claim no. CL-2025-000308**

<u>**BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES**</u>

<u>**COMMERCIAL COURT (KBD)**</u>

**BETWEEN**

**ICONIC SPORTS EAGLE INVESTMENT, LLC**

**Claimant/Respondent**

and

**JOHN TEXTOR**

**Defendant/Applicant**

_____

**DEFENCE ON PRELIMINARY ISSUES**

_____

<u>**Introduction**</u>

1. This Defence on Preliminary Issues (the "**Defence**") is served pursuant to paragraph 3 of the Order of His Honour Judge Pelling KC (sitting as a Judge of the High Court) dated 13 August 2025 (the "**Order**"). Accordingly, this Defence addresses the Preliminary Issues as defined in the Order and is without prejudice to any further matters Mr Textor may rely upon in the event the matter is not disposed of in his favour at the trial of the Preliminary Issues listed for 29 and 30 September 2025 (including, for the avoidance of doubt, any case that Mr Textor was induced to enter into the Put Option Agreement by way of misrepresentation). The defined terms in the Defence are adopted from the Particulars of Claim dated 3 July 2025, unless otherwise specified. Mr Textor makes no admissions by adopting such defined terms.

2. By way of summary of this Defence:

    a. Pursuant to the express wording of Clause 3.3 of the Put Option Agreement, Mr Textor's obligation to purchase the Option Shares only arose if Iconic complied with its obligations pursuant to Clause 3.2 of the Put Option Agreement, including tendering the specified documents by the Repayment Date.

    b. Iconic did not comply with its obligations under Clause 3.2. Iconic failed to provide the specified documents prior to or on the Repayment Date. It follows that Mr Textor was not under an obligation to make payment on the Repayment Date and that Iconic is therefore not entitled to specific performance.

    c. Iconic's contention that the parties' obligations under Clause 3.2 and Clause 3.3 were concurrent obligations is contradicted by the express terms of the Put Option Agreement and there is no proper basis upon which such a term should be implied.

    d. In any event, Iconic itself was not ready, willing or able to perform its obligations under the Put Option Agreement and so is not entitled to specific performance of the Put Option Agreement.

3. Mr Textor does not plead to paragraphs 1 and 2 of the Particulars of Claim which summarise the case advanced by Iconic Spots Eagle Investment LLC ("**Iconic**"). Mr Textor's case is summarised above, and Mr Textor pleads to the substance of Iconic's Particulars of Claim in respect of the Preliminary Issues below.

### The Parties

4. Paragraph 3 is admitted.

5. Paragraphs 4 to 7 are admitted.

**The Shareholders' Agreement**

6. As to paragraph 8:

    a. The first sentence of paragraph 8 is admitted. At the time, the parties intended to enter into a De-SPAC Transaction.

    b. Paragraph 8(1) is admitted as a general summary of a "SPAC" and a "de-SPAC".

    c. Paragraph 8(2) to 8(4) are admitted. At the trial of Preliminary Issues, Mr Textor will rely upon the full terms of the Shareholders' Agreement for their content and effect.

7. As to paragraph 9, it is admitted that the express wording of Clause 15.5 states that Iconic had "*full discretion*" to decide whether to exercise the De-SPAC Option. Otherwise Mr Textor does not plead to paragraph 9 in circumstances where its contents are not relevant to the Preliminary Issues.

8. Paragraph 10 is admitted.

**The Put Option Agreement**

9. The first sentence of paragraph 11 is admitted save that it is not admitted that the parties entered into the Put Option Agreement to confer a right upon Iconic to sell its shares "*in particular*" if Iconic decided not to exercise the De-SPAC Option. The second sentence is admitted save that it was incumbent upon Iconic to properly exercise the Put Option in order to realise value from its investment in the event that it sought to realise value by that means.

10. Paragraphs 12 to 15 are admitted. At the trial of Preliminary Issues, Mr Textor will rely upon the full terms of the Put Option Agreement for their content and effect.

11. The first sentence of paragraph 16 is noted. The second sentence of paragraph 16 is admitted.

12. Paragraphs 17 to 21 are admitted. At the trial of Preliminary Issues, Mr Textor will rely upon the full terms of the Put Option Agreement for their content and effect.

13. As to paragraph 22:

    a. The first sentence of paragraph 22 and paragraphs 22(1) to (3) are admitted.

    b. Paragraph 22(4) is denied. The express terms of the Put Option Agreement are clear and categorical. Mr Textor's obligation to pay the Aggregate Option Price was "*Subject to Iconic complying with its obligations under clause 3.2*". Unless and until Iconic complied with those obligations, which were to be carried out prior to (at the latest) the Repayment Date, Mr Textor was not obliged to make payment of the Aggregate Option Price.

    c. In the premises, the first sentence of 22(5) is denied. The contention that Iconic's obligation under Clause 3.2 and Mr Textor's obligation under Clause 3.3 are concurrent conditions is, in fact, contradicted by the express terms of the Put Option Agreement which make clear that Mr Textor's obligation is conditional upon Iconic's compliance with Clause 3.2. The second sentence is also denied. No such terms implied in fact are to be implied in the present case. The alleged implied term is: (i) inconsistent with the express terms of the Put Option Agreement (such that they cannot be implied in fact); and (ii) does not meet the threshold of necessity (the Put Option Agreement being workable in the absence of the alleged implied term).

14. Paragraph 23 is admitted. At the trial of Preliminary Issues, Mr Textor will rely upon the full terms of the Put Option Agreement for their content and effect.

15. As to paragraph 24:

    a. Iconic was entitled to exercise all or any of the rights conferred by Clause 4.1 in the event that Mr Textor failed to give effect to the Put Option – i.e., acted in breach of his obligations. In the event that Mr Textor's obligation to pay the Aggregate Option Price did not arise, Mr Textor was not in default and Iconic

4

was not entitled to exercise any rights under Clause 4.1. To the extent consistent with the foregoing, paragraph 24(1) is admitted.

b. Mr Textor does not plead to paragraph 24(2) and (3) in circumstances where their contents are not relevant to the Preliminary Issues.

c. Paragraph 24(4) is admitted.

16. Paragraph 25 is noted.

**Purported Exercise of the Put Option**

17. Paragraph 26 is admitted on the premise that the Put Option was, and is, valid and enforceable. As to that premise, no admissions are made, and Mr Textor repeats paragraph 1 above.

18. As to paragraph 27:

    a. It is admitted that, on 26 July 2023, Iconic delivered to Mr Textor an "Option Notice" purporting to provide "*irrevocable notice*" of Iconic's intention to exercise the Put Option. The email by which such notice was provided however expressly invited continued discussion of the listing of Eagle and was inconsistent with an irrevocable intention to exercise the Put Option.

    b. Indeed, at all material times, Mr Textor's understanding was that Iconic had not in practice irrevocably committed to the exercise of the Put Option. To the contrary, Iconic sought to maintain the possibility of participating in the anticipated Initial Public Offering ("**IPO**") in order to obtain a greater upside from its investment.

19. Paragraph 28 is admitted.

20. As to paragraph 29:

    a. The first and third sentences are admitted.

    b. The second sentence is denied. Even if the Option Notice was valid and effective (which is not admitted), Mr Textor's obligation to purchase the Option

      Shares arose only if Iconic complied with its obligations under Clause 3.2 of the Put Option Agreement.

21. As to paragraph 30:

    a. Following receipt of the Option Notice, Mr Textor did respond to Iconic. Indeed, immediately following receipt of the Option Notice, Mr Textor and Iconic were then engaged in discussions as to the potential extension of time for the exercise of the Put Option. Thereafter, the Put Option was discussed between Mr Textor and Iconic, although Mr Textor did not provide a formal documented response to the Option Notice.

    b. It is admitted that, on 19 December 2023, Iconic wrote to the Eagle Board. The partial quotations from Iconic's letter of 19 December 2023 are admitted. At trial, Mr Textor will rely upon the full terms of Iconic's letter of 19 December 2023, its communications and conduct as regards the alleged exercise of the Put Option.

22. As to paragraphs 31 and 32, it is admitted that Iconic wrote the further letters to the Eagle Board on 27 March 2024 and 10 July 2024. The partial quotations from those letters at paragraphs 31 and 32 are admitted. At trial, Mr Textor will rely upon the full terms of those letters, Iconic's communications and conduct as regards the alleged exercise of the Put Option.

23. On or around 1 May 2024, Mr Textor met with Mr Dinan at the offices of York Capital Management in New York. In the course of that meeting: (a) Mr Dinan emphasised that Iconic was in the business of investing in public companies; and, in the context of discussions as to the anticipated IPO of Eagle (b) Iconic obviously did not want the return of its US$75 million investment and interest if its stake in Eagle was worth US$200 million or more and such could be realised through the IPO process. At no point in that meeting did Mr Dinan seek to confirm whether Mr Textor was ready, willing or able to pay.

24. As to paragraph 33:

    a. It is noted that Iconic's factual case as to Mr Textor's alleged unwillingness to perform is limited to the matters pleaded at paragraph 33 – i.e., the alleged statement by Mr Textor that "*he had no ability or intention to pay the sums required under the Put Option Agreement.*"

    b. There was a meeting between Mr Textor and Mr Knaster on 15 July 2024 at Mr Textor's office in Florida. Mr Dinan did not attend that meeting.

    c. It is denied that Mr Textor informed Messrs Dinan and Knaster that Mr Textor had "*no ability or intention to pay the sums required under the Put Option Agreement*" as averred at paragraph 33.

25. Paragraph 34 is admitted on the premise that the Put Option was, and is, valid and enforceable. The second sentence of paragraph 17 is repeated.

26. The first sentence of paragraph 35 is admitted. Iconic itself did not take any steps to sell the Option Shares, or demand payment of the Aggregate Option Price, in whole or part on 26 July 2024. Mr Textor pleads to the substance of the second sentence of paragraph 35 at paragraph 32.c. below.

27. In the premises, paragraph 36 is denied.

28. Paragraph 37 is admitted.

29. As to paragraph 38:

    a. It is admitted that Iconic purported to appoint Perella Weinberg to conduct a Sale Process under Clause 4.1(d) of the Put Option Agreement. It is denied that Iconic was entitled to do so in circumstances where Mr Textor was not obliged to make payment to Iconic pursuant to the terms of the Put Option Agreement.

    b. It is admitted that Mr Textor provided comments on the Sale Process. It is not admitted that those comments were taken into account by Perella Weinberg in the Sale Process.

    c. Mr Textor was informed that Iconic and Perella Weinberg failed to identify a purchaser of the Option Shares.

    d. Otherwise paragraph 38 is not admitted.

30. As to paragraph 39, the fact of and contents of Iconic's letter of 25 June 2025 are admitted.

31. Paragraph 40 is denied. For the reasons pleaded below, Mr Textor was not obliged to make payment of the Aggregate Option Price and is not in default. In the premises, the Aggregate Option Price was and is not due and will not increase.

32. As to paragraph 41:

    a. The first and second sentence of paragraph 41 are admitted (although Mr Textor did not seek to suggest that Iconic had failed to perform its obligations, rather he identified the fact that Iconic had failed to perform its obligations and informed Iconic of the same). Iconic failed to perform its obligations under Clause 3.2 of the Put Option Agreement on 26 July 2024.

    b. Paragraph 41(1) is denied. Iconic was not ready and willing to transfer the Option Shares to Mr Textor on 26 July 2024. Without prejudice to the denial of paragraph 41(1), Mr Textor relies upon the following matters: (i) Iconic did not comply with its obligation to provide the documents specified in Clause 3.2 by the Repayment Date; (ii) Iconic did not take any steps preparatory to providing the specified documents (for example, in providing drafts of the same to Mr Textor) prior to the Repayment Date; (iii) Iconic only provided drafts of a transfer of the Option Shares and irrevocable power of attorney on 25 June <u>2025</u> (i.e., close to a year late and in draft not executed form) and provided a draft indemnity for a lost share certificate (as opposed to a share certificate); (iv) Iconic was unable to perform its obligation to provide a share certificate under Clause 3.2 and (v) to the best of Mr Textor's knowledge Iconic failed to take any steps to verify whether consent was required for any transfer from any

        Football Authority under Clause 13.1 of the Shareholders' Agreement and/or to obtain such consent, or whether any pre-emption rights applied to any transfer of the Option Shares.

    c. As to paragraph 41(2) and assuming that Mr Textor was under an obligation to make payment on that date, it is admitted that Mr Textor was not ready to perform his obligation to make payment of the Aggregate Option Price on 26 July 2024 in circumstances where Mr Textor did not have financing in place at that date. Had Mr Textor understood that Iconic did in fact intend to follow through with the Put Option by delivering the contractual notice on the Repayment Date (as opposed to indicating a desire to participate in or potentially participate in an IPO), then Mr Textor would have made efforts to put financing in place ahead of that date and would have been able to secure financing in short order (not least of all given his strong track record of raising funds and his own net worth). It is denied, however, that Iconic was thereby excused from transferring the Option Shares to Mr Textor or from its obligations pursuant to Clause 3.2.

33. In the premises, paragraphs 42 and 43 are denied and it is further denied that Iconic is entitled to the relief sought. For the reasons set out above, Iconic's claim falls to be dismissed.

**DAVID DAVIES K.C.**

**OWEN LLOYD**

**STATEMENT OF TRUTH**

I believe that the facts stated in this Defence are true. I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

Signed:       *[DocuSigned by: 3DE1E6C36B74418...]*

Name:         John Textor

Date:         20 August 2025